M. A. HUDSON ET AL. v. J. W. SLATE.

Decided January 28, 1909.

**1.—Evidence.**

Evidence that plaintiff was uneducated and illiterate, under proper allegations, was admissible to explain his failure to inform himself as to the existence of liens against land of which he was negotiating a purchase.

**2.—Evidence—Sale—Tender.**

In an action to recover back property traded for land, alleging tender back of the deed furnished as not being in compliance with the contract, evidence of what plaintiff said to his sons, who had for him delivered the property and received the deed, and who read it to him over the telephone, was admissible, in connection with other proof, to show his prompt repudiation of the deed and direction to deliver it back and reclaim the property.

**3.—Evidence—Objections.**

Objections to certain testimony as a whole were not available where part of it was admissible.

**4.—Same—Harmless Error.**

Admission of evidence over objection is harmless where the same facts were subsequently proved without objection.

**5.—Evidence—Corroborative Statements.**

The rejection of statements made to a third person, in disproof of the inference of subsequent fabrication of a fact testified to by a party at the trial but omitted in his previous ex parte deposition, was not ground for reversal where it related to a matter which, if determined in his favor, would not have supported a judgment other than that which was rendered.

**6.—Evidence—Abandoned Pleading.**

An original petition abandoned by amendment and containing no admission material to the issues on trial, was not admissible in evidence for defendant.

Appeal from the District Court of Coleman County. Tried below before Hon. John W. Goodwin.

*Snodgrass & Dibrell* and *Woodward & Baker,* for appellants.

*J. C. Randolph,* for appellee.

HODGES, Associate Justice.—In January, 1907, the appellants were the owners of 389 acres of land, situated in Coleman County and near the farm owned and occupied by the appellee, Slate. Sometime during that month negotiations were entered into between the parties for the purchase of this tract of land by Slate. These resulted in what each of the parties thought was an agreement on the part of Slate to purchase. The record shows that at the time these negotiations were pending there were then outstanding against the land several thousand dollars of purchase-money notes held by other parties. It is also shown that Slate was the owner of two valuable animals, which were to be taken as the consideration he was to pay for the land. A dispute arose between the appellee and appellants as to what consideration Slate had agreed to pay. Slate contended that he was to have the land free from any encumbrance for his two animals, which he valued at $3,100; and the appellants contended that in addition to the two animals Slate was to assume the outstanding indebtedness against the land, and the further sum of $360 for which their personal notes had been given as a cash payment on the land. A few days after the preliminary negotiations took place between Slate and Hudson, one of the appellants, Slate sent the stock by his two sons to Coleman City, with instructions to deliver them to the appellants and

get a deed to the land. The property was delivered in accordance with these instructions to the parties and was put in a wagon yard. Slate's sons, together with one of the appellants, went to the office of a notary to have the deed prepared. The testimony is conflicting as to what occurred during the preparation of the deed, and as to whether or not the deed after being written was explained to the sons of the appellee. The notary testified that he prepared the deed in accordance with the instructions given him by one of the appellants, expressing a consideration of $2,000 paid, and the assumption by Slate of the outstanding indebtedness against the land, which amounted to over $5,000; that upon the completion of the deed it was discovered that no mention was made of a $360 personal note held by Henderson & Beakly against the appellants; that it was finally agreed that Slate should give his personal note for that amount, and no mention should be made of it in the deed. He further testified that the deed was read over and fully explained to the sons of the appellee, John Slate and B. C. Slate; that one of them proposed to sign his father's name to the $360 note, but upon the objection being made that it would be better for the father himself to sign it, this was not done. John Slate and his brother testified that the deed was not read over to them and that they knew nothing of its contents until after it was completed and delivered to them late in the evening; that after it was delivered to them they retired from the notary's office and read it over; that the next morning early they called their father over the telephone, and John Slate read to him the deed; that Slate stated in response to that message that was not the trade he made, and for them to return the deed and bring the stock back home. It appears to be uncontradicted that after this conversation over the telephone with J. W. Slate his sons immediately sought the appellants and found one of them, Knox, to whom they communicated their father's dissatisfaction with the deed and his demand for a return of the stock. Knox referred them to Hudson, and upon going to Hudson's house they found him too sick to talk about the transaction, but later in the day they returned and stated to Hudson their father's dissatisfaction and his statements that the deed did not recite the trade that they had entered into, and demanded the return of the stock. This was refused. Other conversations took place between the parties, Slate insisting that the trade was not as understood, and that he was to have the land free from any encumbrance for the stock, and demanding a return of his property, and the appellants insisting that the deed correctly recited the agreement and the consideration to be paid for the land, and refusing to return the stock. Subsequently suit was instituted by Slate for the recovery of the stock or their value; and from a verdict rendered in his favor this appeal is prosecuted.

The first assignment of error complains of the testimony of J. W. Slate to the effect that he was an uneducated man and not able to read and write. Slate had alleged these facts in his petition as a reason why he had not been on the alert sufficiently to ascertain for himself that there were no liens upon the land at the time he entered into the trade. The assignment is overruled.

Assignments numbers two, three and four are based upon objections

to testimony giving the answer made by J. W. Slate to his son over the telephone when informed of the contents of the deed. J. W. Slate testified that when the deed was read to him over the telephone he "told his son that he had made no such trade with the defendants as that stated in the deed, and directed him to take the deed back to the defendants and get his property." The same facts were testified to by John Slate. The objections made were that this was hearsay, and "was permitting the plaintiff to support his testimony on the stand by hearsay statements to third parties." In his amended original petition the appellee had alleged the very facts here testified to. The appellants had also put in issue the fact that the appellee had returned or offered to return to them the deed in question within a reasonable time after its contents were known to Slate. Slate was unable, so he says, to make the trip to Coleman City, and had entrusted the delivery of the stock and the reception of the deed to the land to his two sons. These were acting as his representatives, but without any instructions as to the contingency which had arisen. What Slate did when first informed of the contents of the deed was a material question in the case in view of the pleadings of the parties. Under the circumstances surrounding him at the time, his declarations and instructions to his agent concerning the property involved, his repudiation of the deed and directions for its return to the appellants, were verbal acts, and as such were admissible in evidence. 1 Greenleaf, section 108; 3 Wigmore on Evid., section 1770; 11 Ency. of Evid., 378. His directions to his agent at the time were not upon a parity with similar statements which he might have made to a third party having no necessary connection with the transaction. He intended for his statements to be communicated to the appellants, and the records show that this was promptly done. Whatever may be said with reference to the admissibility of that portion of his statements to this son over the telephone, in which he said that he "had made no such trade with the defendants as that stated in the deed," there can be hardly any question that his directions for his son to return the deed to appellants and get his property were admissible. The objections of the appellants being to the whole of the declarations, if any portion was properly admitted, there was no error in overruling the objections as made. However, we think that whatever of error there might be in the admission of this testimony, it was cured by the same evidence being permitted to go to the jury unobjected to at a different time. While Hudson, one of the appellants, was on the stand, he testified that B. C. Slate, a son of the appellee, came to him and said: "'Mr. Hudson, there is a misunderstanding.' I said, 'I guess not.' He (B. C. Slate) says: 'We called the old man up over the 'phone this morning and read the deed to him, and the old man says that was not the trade.'" This evidently put before the jury substantially the same facts, and without objection. For still another reason we do not see how the admission of this evidence could have possibly operated prejudicially to the appellants in the trial of this case. The fact that Slate repudiated the trade and refused to accept the deed tendered him because it recited the assumption by him of the payment of the outstanding debts against the land, and on the same day demanded a re-

turn of his stock, is put beyond controversy by other testimony. This is not disputed directly or indirectly by any witness who testified in the case. We do not think there was any error in admitting the testimony.

It appears from the record that on the date prior to this trial the plaintiff below had taken the ex-parte depositions of the appellants Hudson and Knox, but had never filed them among the papers of the case. During the cross-examination of Hudson he was asked by counsel for plaintiff if, in answer to interrogatories propounded to him on that occasion, in stating the consideration Slate was to pay for the land, he had omitted any mention of the $360 note which he now claimed Slate was also to pay. Hudson admitted that he had not in terms mentioned that note. Similar questions were asked Knox upon his cross-examination, and a similar reply given. Counsel for appellants objected to these questions and answers, for reasons which we think were wholly untenable. Subsequently appellants offered to prove by the witness Henderson, that on the morning after the deed was prepared both Hudson and Knox told him, Henderson, that as a part of the consideration for the sale of the land Slate was to assume and pay off the $360 note. This proffered evidence, we think, was properly excluded by the court. Hudson and Knox were parties in interest and were the defendants in this suit. Their declarations which were offered were made in their own interest and on the very day the controversy arose, and may have been after they had notice of the refusal of Slate to accept the deed as made. The only legitimate purpose which this testimony could have subserved was to show that the testimony of the appellants to the effect that Slate was to also assume the payment of the note for $360 was not a recent fabrication. 1 Greenleaf (16th ed.), section 469b; Lewy v. Fischl, 65 Texas, 318; 2 Wigmore on Evid., section 1129. Neither of the appellants had been impeached in any manner. The effect of their answers concerning the failure to speak of the note as being a part of the consideration for the sale of the land at the time their depositions were taken tended merely to show that they had omitted to mention this fact at a time when it may have been their duty to do so. The inference of recent contrivance as to this particular fact is the only one that could have been drawn from this silence, if it be construed as silence, and was the only harmful result that could have followed. Hence, the situation which ordinarily permits a witness to be sustained by showing statements made out of court consistent with those made on the stand is not presented. The rule applicable to the situation here presented is thus stated by Mr. Greenleaf in a part of the section above cited:

"(5) Similarly, where it has been shown that the witness failed to speak of the matter at a time when he might have done so, and the inference is suggested that his present story is therefore a matter of recent contrivance, it is useful to show that the witness, on the contrary, has already made the same statement, and thus is not now for the first time making it, the inference of recent contrivance being thus rebutted."

At most the testimony of Henderson was admissible only for the

purpose of showing that the statements of the appellants as to the assumption by Slate of the payment of the note for $360 was not a "recent contrivance," as stated above. If the issue as to whether Slate had in the trade assumed the payment of this particular note was of such materiality as to constitute an essential part of the defense to this suit, and Henderson's testimony were not otherwise objectionable, then we think the court erred in refusing to admit it. But the record in this case shows that proof of that fact was not material to the defense of the appellants. The undisputed testimony is to the effect that there were over five thousand dollars in purchase-money notes outstanding against the land; that in writing the deed the notary recited the assumption of these notes alone, and no mention was made in the deed of the note for $360; that when the deed was read to Slate over the telephone he claimed that he was to pay no part of this indebtedness, and that the live stock which he delivered was the sole consideration agreed to be paid by him. It is further shown that this was his contention for refusing the deed at all times thereafter. It if be admitted as a fact that appellants had told Henderson what the latter would have testified to, and also that they had consistently maintained that the assumption of this particular note was a part of the consideration to be paid by Slate, still it would not be any defense to this suit. The issue made is, did Slate agree to assume any part of the indebtedness against the land? not whether he agreed to assume the payment of this particular note. There is nothing in the rejection of this proffered testimony which would require a reversal of the case.

The eleventh assignment complains of the refusal of the court to permit appellants to read in evidence the original petition of the appellee, there having been an amended original petition filed and upon which the same was being tried. This was excluded upon the objection that it was immaterial and irrelevant. The entire petition was offered, and no particular purpose for which it was intended to be used was indicated by counsel offering it. Generally, abandoned pleadings may be offered and used in evidence when relevant and material to the issue involved in the trial, but their relevancy and materiality are to be determined by the same rules which govern the admissibility of other testimony. Upon an examination of this pleading we find nothing in it which is material to any issue in this case. We think the court properly sustained the objection.

The judgment of the District Court is affirmed.

*Affirmed.*

Writ of error refused.