**WESTERN UNION TELEGRAPH CO. v. OAKLEY. (No. 846.) ***

(Court of Civil Appeals of Texas. Amarillo. Nov. 27, 1915. Rehearing Denied Jan. 12, 1916.)

1. TELEGRAPHS AND TELEPHONES ☞37—DELAY IN TRANSMISSION OF MESSAGES — EXCUSE.

Where a telegram is sent to an addressee in care of a third person or a corporation, delivery to either relieves the telegraph company of liability.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 23, 24, 29, 30, 32; Dec. Dig. ☞37.]

2. TELEGRAPHS AND TELEPHONES ☞66—DELAY IN TRANSMISSION OF MESSAGES—FINDINGS.

That a telegraph company did not deliver a message consigned to the care of a telephone company to that corporation or disclose the contents of the message, warrants a finding that the telegraph company did not use ordinary care to deliver the message.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 61–63; Dec. Dig. ☞66.]

3. EVIDENCE ☞121—TELEGRAPHS AND TELEPHONES ☞57 — RES GESTÆ — DELAY IN TRANSMISSION OF MESSAGES—LIABILITY.

Where the agent of a telegraph company, instead of delivering a message to a telephone company to which it was consigned, attempted to discover the addressee's whereabouts through the agency of the telephone company, the telegraph company was liable for the negligence of the telephone company, and conversations between the servants of the telephone company and the telegraph company's agent, as well as conversations between the employés of the telephone company are admissible as part of the res gestæ, so a conversation showing that had the contents of the message been disclosed to the employés of the telephone company it might have been delivered is admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 303, 307–338, 1117, 1119; Dec. Dig. ☞121; Telegraphs and Telephones, Cent. Dig. § 38; Dec. Dig. ☞57.]

4. EVIDENCE ☞155 — ADMISSIBILITY — CONVERSATIONS.

Where in an action against a telegraph company for delay in transmission of messages, it appeared that the telegraph company made a telephone company its agent to ascertain the addressee's whereabouts and parts of conversations between the telegraph company's agent and employés of the telephone company were received in evidence, the whole of such conversations should be received.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 445–458, 2148; Dec. Dig. ☞155.]

5. APPEAL AND ERROR ☞1053 — REVIEW — HARMLESS ERROR.

Where the agent of a telegraph company testified that he did not remember or understand a purported conversation whereby a telephone operator told him that if he would disclose the purport of a message she would deliver it to the addressee's father-in-law or wife, and it would be received, and evidence of her statements to that effect was improperly received, a charge that such evidence could not be considered unless the conversation was transmitted to and understood by the telegraph company's agent rendered its admission harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4178–4184; Dec. Dig. ☞1053.]

6. TRIAL ☞314 — CONDUCT — CUSTODY OF JURY.

Where the court as a matter of pleasantry in directing the jury to attempt to agree, told them that they had the whole world to agree upon and the whole week, and it was not shown how long they had been deliberating or how soon thereafter they returned their verdict, the remark was not erroneous, notwithstanding the general rule that remarks having a tendency to leave an impression upon members of the jury that the court intends to coerce them constitute reversible error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 472, 473, 747, 748; Dec. Dig. ☞314.]

7. APPEAL AND ERROR ☞1046 — REVIEW — HARMLESS ERROR.

Where the jury in an action for delay in delivery of a death message agreed as to all the issues but that of damages, a remark by the court intended as a pleasantry, that the jury had the entire world to agree upon and the entire week, does not constitute reversible error where there was no showing how long, after the remark was made and the jury sent back, they deliberated, and there was no contention that the award of damages was excessive.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4128–4131, 4134; Dec. Dig. ☞1046.]

Appeal from District Court, Hall County; J. A. Nabers, Judge.

Action by J. J. Oakley against the Western Union Telegraph Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Huff, Martin & Bullington, of Wichita Falls, for appellant. Moss & Leak, of Memphis, for appellee.

HALL, J. Appellee sued appellant company, charging in his petition substantially that on or about the 13th day of January, 1914, Frank Oakley, a brother of the plaintiff, delivered to the defendant at Ranger, Tex., the following telegram, addressed to plaintiff at Memphis, Hall county, Tex., to wit:

"J. J. Oakley, Memphis, Texas, care of phone line. Father not expected to live. Frank Oakley."

That at the time of the delivery of said telegram Frank Oakley paid the agent of the defendant company at Ranger the sum of 30 cents, that being the charge for transmitting said message, and informed said agent of the serious illness of his father and the father of J. J. Oakley, and that plaintiff resided in a little town called Eli about seven miles southwest of Memphis, and requested that the message be delivered by the defendant company at the home of J. J. Oakley, at Eli, in Hall county, and guaranteed to pay and did pay all of the necessary expenses for delivering said message; that said agent promised Frank Oakley that said telegram should be delivered, and accepted the same

---

for delivery under the above terms and conditions; that defendant did not transmit and deliver said message on the 13th of January, 1914, nor at any other time; that by the use of reasonable and proper diligence the defendant could have transmitted and delivered said message to the plaintiff at Eli, Tex.; that had the telegram delivered to the defendant for transmission on the 13th day of January, 1914, been delivered to the plaintiff herein, or to his home at Eli, the plaintiff could and would have gone to Ranger and been present at the bedside, death, and funeral of his father; that the father of plaintiff died on the 16th day of January, 1914; that by reason of the failure of defendant company to deliver said message, plaintiff was deprived of the privilege of seeing and being with his father at the time of his death and funeral. There was a prayer for damages in the sum of $3,000.

The defendant's answer contained general and special denials and alleged in substance that said message was promptly transmitted to Memphis and was received at Memphis at 10:10 a. m. on that day. That the agent at Memphis used proper diligence to deliver said message by inquiring of the telephone people conducting a telephone exchange at Memphis and by calling up various and sundry parties, but that said J. J. Oakley could not be located or his whereabouts learned; also every effort was put forth to find him until the hour of 10:45 a. m., when defendant's agent was informed that there was a man by that name living at Eli; that defendant's agent at once undertook to deliver said telegram to plaintiff at Eli, and at 10:55 a. m. was informed by the telephone operator that Mr. Oakley had been seen to go by the telephone office at Eli in a wagon earlier in the day and they thought he would be back and they would get him as soon as possible. That at 1 p. m. on the same day defendant's agent at Memphis renewed the call for plaintiff and that he was informed that plaintiff had left Eli earlier in the day for some place out west; that plaintiff did in fact leave his home at Eli on a journey to Tulia, Swisher county, earlier in the morning of the 13th of January, and that he could not have been reached by telegram by the use of any amount of diligence on the part of defendant or its agents.

By supplemental petition plaintiff denied in general terms the allegation of defendant's answer and alleged in substance that defendant could have delivered said telegram to one C. A. Barton, or to the wife of J. J. Oakley, at Eli, on the 13th day of January, 1914, and that in this way the plaintiff Oakley could have been reached.

Defendant filed a supplemental answer, denying that it had any knowledge that plaintiff had a wife at Eli, or that C. A. Barton was his father-in-law, but that after it failed to deliver said message at Eli, it immediately sent a service message to the office at Ranger, reporting the facts as learned, and did not learn until several days later that plaintiff had relatives at Eli, Tex.

Upon the answers returned by the jury to special issues submitted, a verdict and judgment were rendered against the defendant company, in favor of the plaintiff for the sum of $800.

[1-4] The first assignment is that the court erred in admitting the testimony of Mrs. Dora Davis, to the effect that she had a telephone conversation with some party at Memphis, Tex., on January 13, in which she informed said person that Mr. C. A. Barton, the father-in-law of the plaintiff, was there at Eli in the office, and would receive the telegram, and that said party said that they would not deliver to any one but the addressee. The objection made was that the testimony was hearsay, immaterial, and inadmissible, because it was not shown that this information was ever brought to the knowledge of the defendant, its agents, or servants, or that the conversation was between the said Mrs. Dora Davis or any agent of the defendant. Mrs. Davis testified that she was a clerk in the store at Eli, and attended the telephone booth at times; that she answered the telephone call from the operator at the Memphis Telephone Exchange. The witness could not give the name of the operator at Memphis, but said she asked for J. J. Oakley, and that the Western Union was calling him; that she told the Memphis operator that Oakley was away. The witness proceeds:

"Then I turned and had a conversation with the father-in-law of J. J. Oakley, who was in the store at that time. He stated if it was a message to J. J. Oakley he would deliver it. Then I called the central office at Memphis and told the operator that C. A. Barton, the father-in-law of J. J. Oakley, was in the store, and would deliver the message to the plaintiff, and she, after waiting a few minutes, while I held the phone, told me that the Western Union refused to deliver the message to any one except J. J. Oakley. Why, I asked her to tell me what the message was so I might tell the father-in-law of J. J. Oakley, as he was then in the store. I asked for the contents of this message at the request of C. A. Barton."

The first proposition under the assignment is that this is a hearsay statement, not made by any one in privity of contract with or any agent of the defendant company.

The second proposition is that where the message was to be transmitted by the initial connecting carrier, the initial carrier is not responsible for the negligence of its connecting carrier, and there is no such relation or privity of contract between said initial carrier and the connecting carrier as would authorize the admission in evidence of the statement of declarations of the agents of the connecting carrier against the initial carrier, and such statements of the agent of the connecting carrier, if admitted in evidence against the initial carrier, over proper objections being made at the time, and when such statements tend to charge or do

charge the initial carrier with negligence, the admission of such testimony is error.

C. T. Palmer, the manager for the Western Union Telegraph Company, at Memphis, testified to the following fact:

"When I received that message, the first thing I did was to send the messenger boy to the hotels, and he came back in about five minutes and said the party was not to be found there. First, though, I called on the phone people, as it was destined in care of the phone line, and they said they did not have any telephone in any such subscriber's name, and then it was I sent the message up to the hotels; then I went out and tried to find the party myself. * * * In 10 or 20 minutes after I first talked to him (Mr. McQueen), he told me he was satisfied this party I was looking for lived at Eli, out west of town. So I called long distance and put in a call for J. J. Oakley at Eli, Tex., and they reported they were not able to get him; that it was impossible to get him. I waited awhile and then called up again and asked them if they had heard anything, and then they told me that the party had left Eli in a wagon going across the plains somewhere to Silverton, or Tulia, or somewhere out there and that he had been gone some time. I could not find out just what time he left but he had been gone some time and I could not get him."

On cross-examination he said:

"When I talked to Gammage he told me there was a party at Eli by the name of Oakley and I then called up long-distance operator and put in a call for J. J. Oakley. I asked the phone operator to get J. J. Oakley at Eli; she reported to me the result of her efforts to get him, but I do not think she did so until after I had called up again with reference to the call. I called her up in the first instance and asked her to get J. J. Oakley at Eli. As to whether or not I told her what message I had I could not say. I could not tell you exactly what I did say at that time. I do not think I told her the contents of the message I had for J. J. Oakley. She later reported to me that J. J. Oakley had gone from Eli somewhere that morning. I do not think the phone operator told me that C. A. Barton, the father-in-law of the plaintiff, was in the store there at Eli, and asked if he would do. I did not ask her whether or not Oakley lived at Eli. When she first spoke to me about it she said he was moving or loading a wagon to go across the country. I did not ask her whether or not the plaintiff was a married man; did not ask her anything in regard to that. I did not ask the operator if any one else was there at Eli to whom the message could be delivered. I presume that when I found J. J. Oakley was away from home I ceased my efforts, and immediately after I found that out I sent the service message back to Ranger, telling them he had left Eli, going to the plains. It is not a fact that the phone people advised me that the plaintiff's father-in-law, C. A. Barton, was in the store, and would receive the telegram; they did not report that fact to me. I think at that time the phone office reported the conversation which they had with Eli. I do not think they asked me if C. A. Barton, the father-in-law of the plaintiff, would do. I did not reply that it was a message to J. J. Oakley and no one else would do. I only used the phone for the purpose of finding the plaintiff."

Under this testimony the question of the liability of a connecting carrier does not arise. The defendant company would have been relieved of liability if, as directed by the sender of the message, delivery within a reasonable time had been made to the telephone company. The rule is settled in this state that when a telegram to an addressee is sent in care of a third person or corporation, delivery within a reasonable time by the telegraph company to either the addressee or the person or corporation in whose care the message was sent, relieves the company of liability. Western Union Telegraph Co. v. Young, 77 Tex. 245, 13 S. W. 985, 19 Am. St. Rep. 751; Western Union Telegraph Co. v. Terrell, 30 S. W. 71; Western Union Telegraph Co. v. Elliott, 27 S. W. 221; Western Union Telegraph Co. v. Thompson, 31 S. W. 318; Western Union Telegraph Co. v. Pearce, 95 Tex. 580, 68 S. W. 772; Jones on Telegraphs and Telephones, § 290. It appears from the testimony of defendant's superintendent, Palmer, at Memphis, that the sender's directions were disregarded, and that instead of making delivery to the telephone company the defendant company, through its superintendent, constituted the telephone company its agent to locate the addressee.

The jury found, in reply to the first question, that the defendant's agent at Memphis did not use ordinary care to deliver the telegram, and the fact that the message was not delivered to the telephone company, and the further fact that its contents were never made known to the operators of the telephone company, is sufficient to sustain this finding. Having constituted the telephone company its agent, to locate and find J. J. Oakley, the defendant is properly chargeable with negligence, if any, of such agent, and the conversations between the employés of the telephone company, in an effort to accomplish the purpose of the principal, are clearly admissible as part of the res gestæ. Hudson v. Slate, 53 Tex. Civ. App. 453, 117 S. W. 469; Western Union Telegraph Co. v. Uvalde National Bank, 97 Tex. 219, 77 S. W. 603, 65 L. R. A. 805, 1 Ann. Cas. 573; Naylor v. Parker, 139 S. W. 93. Since the evidence clearly showed that the telephone company was constituted the agent of the defendant company, and part of the conversation and transaction between the superintendent of the telegraph company and the operators of the telephone company was introduced by the defendant, plaintiff was entitled to have the whole of such conversations in evidence. We think the testimony of Mrs. Davis was further admissible upon the question of the negligence of the agent of the telephone company with which it is properly chargeable.

[5] Even though we should hold the admission of this evidence to be error, the court gave appellant's special charge No. 3 as follows, which in our opinion, would render the error, if any, harmless:

"You are further instructed by the court that you cannot consider any part of the testimony of Mrs. Dora Davis or Mr. C. A. Barton, relative to a phone conversation between the lady in charge of the telephone exchange at Memphis and the said Mrs. Dora Davis, unless you believe from the evidence that such conversation was transmitted to and understood by the agent of the defendant, C. T. Palmer, at Memphis, Tex., and the defendant would not in any way be

bound by such conversation unless at least in substance the same would be known to its agent at Memphis."

[6, 7] Appellant next insists that the court erred in telling the jury, after answers to all of the issues save one had been agreed upon:

"You are bound to agree on the last special issue. You have the whole world to agree on and the whole week before you."

The bill of exception upon which this assignment is based, omitting the formal parts, is as follows:

"That during the trial of the above numbered and styled cause, and while the jury were deliberating upon their verdict in said cause, the jurors came into open court and reported to the court, and handed to the court their answers to special issues 'A,' and 'B,' and 'C,' and announced to the court that they could not agree upon a verdict as to special issue No. 'D,' and the court inspected their answers to special issues 'A,' 'B,' and 'C,' and then remarked, 'You are bound to agree on the last special issue. You have the whole world to agree on and the whole week before you.' Said last-named special issue referred to by the court was the question of the amount of damages suffered by the plaintiff by reason of the nondelivery of the telegram sued upon, whereupon defendant, Western Union Telegraph Company, in open court, excepted to said remark of the court as being prejudicial to the rights of the defendants," etc.

The court qualified this bill as follows:

"Examined and approved, and order filed as a part of the record herein, with the qualification that while the remark of the court was in substance as above given, that my recollection of it is as follows: 'You can agree all right. You got the whole world to agree on and the whole week before you.' This was merely a little chaff to the jury containing no specific meaning capable of being discovered by the naked eye, and encouraged the jury to come to some agreement and not hang. Judge Martin, when the jury had gone out, came around and says: 'I believe I will except to the remarks of the court to the effect that they got the whole world to agree on and all the week to do it in. I did not call the plaintiff's counsel's attention to the exception at the time, considering it as a pleasantry of Judge Martin's as the remark of the court was."

As a general rule, remarks of this kind which have a tendency to leave the impression upon the members of the jury that the court intends to coerce them, constitute reversible error. Pecos & North Texas Ry. Co. v. Finklea, 155 S. W. 612; G., C. & S. F. Ry. Co. v. Johnson, 99 Tex. 337, 90 S. W. 165; Wootan v. Partridge, 39 Tex. Civ. App. 346, 87 S. W. 356; Cornelison v. Ft. Worth & Rio Grande R. R., 46 Tex. Civ. App. 509, 103 S. W. 1186; North Dallas Circuit Ry. v. McCue, 35 S. W. 1080.

We must take the court's qualification of the bill as true. According to the record before us, we doubt if the language used by the court, as stated in his qualification, was taken by the jury in the sense in which it is construed by appellant. The record does not show how long the jury considered the case after the remark was made, and we must presume in support of the judgment that they gave the matter of the amount of damages full and careful consideration. Appellant does not insist that the verdict is excessive, or that it was returned in undue haste. No injury being shown, this assignment is overruled. Hermann v. Allen, 118 S. W. 794, 798.

The evidence is sufficient to support the verdict. The remaining assignments are overruled, and the judgment is affirmed.