## B. F. CORNELISON v. FORT WORTH & RIO GRANDE RAILWAY COMPANY ET AL.

Decided May 25, 1907.

**Practice—Verdict—Jury—Colloquy with Judge.**

A jury should be entirely free from any influence on the part of the trial judge in the matter of rendering a verdict. Colloquy between a trial judge and a hung jury considered, and held to have probably induced some of the jury to consent to a verdict when they would not otherwise have done so, and hence reversible error.

Appeal from the District Court of Tarrant County. Tried below before Hon. Irby Dunklin.

*Miller & Dycus* and *A. L. Matlock,* for appellant.

*Capps & Cantey* and *Hanger & Short,* for appellee.—It is proper for the jury to communicate with the court, and to state to the court, either verbally or in writing, any particular question of law, upon which they desire further instruction, and the court does not err in complying with such a request. Rev. Stats., arts. 1307-1310.

SPEER, ASSOCIATE JUSTICE.—B. F. Cornelison sued the Fort Worth & Rio Grande Railway Company, the St. Louis &˙ San Francisco Railway Company, the Chicago, Rock Island & Gulf Railroad Company and the Fort Worth Stock Yards Belt Railway Company, to recover damages for personal injuries received by being thrown from the top of a box car while on the line of the last named defendant in Fort Worth, Texas. The Fort Worth Stock Yards Belt Railway Company pleaded contributory negligence upon the part of plaintiff in that he was standing on the top of the car at the time he received his injuries, rather than sitting or otherwise occupying a safer attitude or position. The trial court instructed a verdict for all of the defendants except the Fort Worth Stock Yards Belt Railway Company and the jury returned a verdict in its favor. The plaintiff has appealed, though he makes no complaint as to the summary instruction, and as to the defendants thus favored the judgment will be affirmed.

By bill of exception it is made to appear that the trial of this case was begun Tuesday, June 11, 1906; the jury were impaneled June 12 and the cause was submitted to them at three o'clock p. m., Friday, June 15. The jury retired to consider their verdict and remained in their room until five-thirty or six o'clock of that day, when they were excused until nine o'clock Saturday morning and considered the case from that hour until twelve noon of that day, and were again excused until two o'clock p. m., when they reconvened and remained in session until five o'clock the same evening. Before being excused on Saturday evening they reported that they could not agree, and asked to be discharged, which request was refused by the court. The jury reconvened the following Monday morning at nine o'clock and were kept together until twelve noon, and from two o'clock p. m. until five o'clock p. m. of the same day, and at eleven o'clock Tuesday morning, June 19, they reached a verdict in favor of the defendant. The same bill discloses the following proceedings: "At 12 m. the jury are called into court.

"The Court—Have you reached a verdict, gentlemen?

"A Juror—Judge, it is absolutely impossible to reach a verdict; absolutely impossible.

"The Court—Well, gentlemen, I have no desire to keep you any longer than is necessary; but very frequently the juries think they can not reach a verdict, and do so unexpectedly to themselves. You think, gentlemen, you will be able to reach a verdict upon further deliberation? Sometimes, after thinking over the matter further, may be able to get together. Gentlemen, under instructions given you at the outset, that it would be improper for you to discuss this case with anybody during adjournment hours, or allow anyone to discuss it with you, under those instructions you will be excused until two o'clock.

"June 18, 1906—Jury in court at noon.

"The Court—Gentlemen, you have not got a verdict yet?

"A Juror—No, sir, Judge; we can not agree at all; it is impossible.

"The Court—Is there anything about the charge, gentlemen, you don't understand?

"A Juror—No, sir; we think we understand it thoroughly.

"The Court—Do you desire any further instructions from the court?

"Juror—No, sir.

"Another Juror—I don't think there is any need of anything further; everything is plain.

"The Court—You think you understand the charge?

"Juror—Yes, I think fully.

"The Court—Gentlemen, you all know—I usually don't tell the jury so, because they usually understand it anyhow—that in the event you disagree as to your recollection of the testimony of any witness and desire to have that witness's testimony repeated, you have the right to have it done. You all understand that?

"Juror—Yes, I understand that. I don't think that has anything to do with it whatever.

"Another Juror—Some of them seem to understand the charge one way and some another.

"The Court—Now, gentlemen, I tried to write that charge very plainly. There are but three or four issues there in all. I would suggest that you take up the issues separately, and pass on them without regard to consequences of your finding upon any particular issue, and then go back and look at the charge and see what the charge directs shall be done in the event of finding upon any particular issue. The case could have been submitted on special issues. Then you would have to answer yes or no to the particular questions. Now the first paragraph of the charge, really the first paragraph of the charge, is a peremptory instruction as to some of the defendants. Now you see that next paragraph of the charge, and it submits an issue of fact for you to determine.

"Juror—That is where we hang, right there. We understand the charge.

"The Court—Then the next issue would be the amount of damages. Then the next one is the converse of the first.

"Juror—Yes; we couldn't get to no agreement on anything at all.

"The Court—Then you take the third issue——

"Juror—I don't think there is a gentleman on the jury but what thinks it is impossible for us to agree.

"The Court—On the first issue?

"Juror—On any of them.

"Another Juror—I think our main difference is on the question of carelessness. There is a portion of the jury regard he didn't observe the amount of prudence he should have done; others think he did. That is where the contradiction is. It is not in your charge; it is simply on the question of carelessness; to which side it should be attributed; one thinks one way and the other the other.

"Another Juror—That is what we have hung on all along.

"Another Juror—Suppose we thought both sides were negligent, careless; then how would we proceed?

"Another Juror—The charge is specific on that point I think.

"The Court—Well, that paragraph right there, beginning 'Plaintiff likewise owed the duty, under the law, to exercise that degree of care for his personal safety,' you find that answered right there.

"Juror—It is just a difference of opinion as to both parties; one believes one way and one the other, and been since Friday evening on that, and no change at all; absolutely none; no hopes of a verdict I think.

"Another Juror—I don't think we would ever get together on it, on that one difference right there.

"The Court—Well, gentlemen, I would be glad for you to try it again after noon; and you might take that suggestion, just take up those issues along that line; just see whether you can answer yes or no to any of those issues, and then go back and see what the results of those answers would be.

"A Juror—I think we have followed mighty near that course in our deliberations. I think we have gone through it time and again.

"The Court—You might try it that way and just shut your eyes to results.

"A Juror—Judge, would it be right to reach a verdict, some kind of compromise?

"The Court—Well, gentlemen, I could not instruct you on that. I could not give you any instructions there, except the fact, you take the language of the charge; that is, to try the case according to the law as given in the charge and the evidence as submitted under the rulings of the court.

"A Juror—We have taken that up section by section and discussed them.

"The Court—Gentlemen, I believe I would be glad if you would try it again after noon, if you please. I hate very much to keep you working on it so long. You can understand my situation.

"A Juror—There is one thing in that charge there. Does that relieve the Belt Line of its responsibility from these parties that come with their stock, when they take it from one road over their road, are they responsible for those parties that come with their stock, following their stock until the time they are delivered into the cars of the other road, who make the other contract? In your charge it says they are not responsible, and that is one point that they are hanging about. Does it relieve them of their liability, even though they be careless?

"The Court—Sir?

"Juror—I say, we want to know if the Belt Railway, after receiving this carload of cattle from the Frisco here, and those men are following it, and the Belt Railway or whatever road that takes that car of cattle, would they be responsible for the safety of those people until they were delivered out of their hands again, though they had no contract with them, they are dealing through another road?

"The Court—Well the duty—I did not go into the question of contract, but the legal duty is defined right here: 'While defendant Fort Worth Belt Railway Co. was moving the cattle in question . . . with plaintiff riding thereon, it was not an insurer of his safety, but owed to him the duty, under the law'—and so on.

"A Juror—We can't come to an agreement, but shall we return a verdict—you have given peremptory instructions as to one or two railroads; shall we return a verdict in that case?

"The Court—No; it wouldn't do any good.

"Juror—I don't think there would be any chance for us to agree.

"Another—We were exactly where we were Friday evening.

"Another—It is all right on one thing, and we have discussed it thoroughly; the same argument over and over. Just the question of negligence. We are perfectly willing to go back if it would do any good.

"Another—I am, too, but I have another proposition on hand, and I know we can't agree.

"The Court—You gentlemen all understand my situation is one of trying to save expense to the county.

"Juror—We appreciate your position, but we can't decide it.

"The Court—Gentlemen, I would be glad if you would try it one more time this afternoon, if you please.

"Juror—All right, Judge; we will try, Judge.

"Jury called into Court at 5:45 p. m.

"The Court—Gentlemen, I have been thinking quite a good deal on the question asked me just before noon; and that was, whether I can give you any instructions on this matter of compromise—of a compromise verdict. I will look that law up and see if I can give you any instructions on that, and if you all will come back here in the morning, I will not keep you more than an hour; I promise you that right now. It is just my exceeding desire to try to save the county expense of another trial. It costs the county about $300 to try this case once, and I hate worse than you do to keep you together, and if you gentlemen will come in here in the morning at nine o'clock, I promise you you will be out by ten if you don't get a verdict, and in the meantime I will see if I am allowed to give you any instructions along that line.

"A Juror—I don't believe that would do us a bit of good on earth.

"Another Juror—I don't believe it will. I don't believe there is any possible chance to arrive at a verdict.

"Another—I merely asked that question, I thought it might be possible we could get together this afternoon; but we can't, even with that, we can't arrive at a verdict.

"Another—That question of compromise of verdict in there, we consider that we can hardly arrive at a compromise, the way we stand, and carry out our instructions.

"Another—I don't believe that time would have any effect on the decision of the jury.

"Another—I for one don't want to come back, but I can come back, but I think it would be useless.

"Another—We would be willing if we thought there was anything in it, but I don't see any possible chance if we come back.

"The Court—Sometimes I have known jurors to stay together here three or four days, and finally, all at once, find a verdict.

"Juror—Suppose I thought the accident was attributable to his carelessness, and in the event of a compromise, suppose I would come over and agree on a minor sum; would that be a legal verdict?

"The Court—That is the very question I am considering.

"Juror—Have I a right to ask that question?

"The Court—Yes, you have a right to ask the question, and it has been some time since I have looked up the decisions on just such a question as that, and that is the reason why I want to look it up and see if there is any law on that. I am not sure.

"Another Juror—Well I, for one, don't think there is any possibility for agreeing, while I can come back, but I don't want to.

"A Juror—I believe we would have to be vested with some arbitrary power before a change could be made.

"A Juror—Some of us are speaking about the evidence; whether it would do any good or not.

"The Court—We can get it and read it if you want it.

"Another—I don't believe it would do a bit of good.

"Another—Not a one of us on this jury believe we can decide it; not a one.

"The Court—The only thing I would ask you to come back on that account, would be merely to try to see if I could look up any law on that point. If you gentlemen have no serious objection to that I would be very much obliged to you.

"Juror—We can do that; would be willing to help out all we could.

"Another—The point we are divided upon is whether or not it was his fault in standing up, or whether the railroad company.

"Another—I would suggest, if it would not be too much trouble, to have Cornelison's evidence.

"Another—In the event that there was doubt as to mutual carelessness, is either side entitled to the doubt?

"The Court—How is that?

"Juror—If there is an opinion either side was careless, if there is doubt existing as to the most carelessness, is either side entitled to the benefit of the doubt?

"The Court read to the jury the charge on proximate cause, and contributory negligence.

"The Court—I could have Mr. Scougale to assist you; I can have any part of the evidence written off for you on any particular point and give it to you in the morning.

"Juror—That is the most particular point, about his standing.

"The Court—You want Cornelison's testimony written off, on what particular point?

"Juror—As to his idea as to whether it would have been safer for him to sit down than stand up.

"Another—I don't know of any particular point at all.

"The Court—On his knowledge of the danger of standing?

"Another Juror—Yes; as to whether he knew it would be safer for him to sit down.

"Another—That argument we had in the jury room; if he did say it it wouldn't make a particle of difference.

"Another—Well, that is the part that is wanted.

"Another—That is the only part that would have any bearing on the case.

"Another—Some gentlemen think even if he did make that state-

ment it wouldn't change the facts, so it wouldn't do any good; just put Mr. Scougale to trouble for nothing.

"The Court—Well, if you all desire it, Mr. Scougale will write it off. I would not have any authority to give it unless you all say you would like to have it—to have Mr. Cornelison's testimony written off on that point.

"A Juror—As to his knowledge of whether it would have been safer sitting down.

"The Court—All right; I will get Mr. Scougale to write it off for you and have it for you in the morning, and you all can get it, and I will let you be excused any time you knock on the door and say so, if you are not through in ten minutes."

We have carefully considered appellant's complaints as to the effect of the proceedings disclosed in the above bill, and are constrained to hold that the conduct of the court, while no doubt prompted by the most commendable desire of saving to the county the expense of another trial, amounted to an undue influence and stress upon the jury, depriving them of that freedom which ought to be present and be exercised in the rendition of any verdict. From the entire proceeding, which we have taken the pains to set out at great length, it appears to us that probably the solicitude of the court to avoid another trial has induced some of the jurors, at least, to consent to a verdict, when they would not otherwise have done so. The whole proceeding partakes more of the nature of a joint consideration of the verdict between court and jury than the genius of our laws contemplates. Especially do we think the court's course in temporizing with the jury as to the very dangerous question of a compromise verdict was harmful in its tendency in the extreme, to appellant. Gulf, C. & S. Fe Ry. Co. v. Johnson, 99 Texas, 337; North Dallas Circuit Ry Co. v. McCue, 35 S. W. Rep., 1080; Wootan v. Partridge, 87 S. W. Rep., 356.

There are no other errors which would require a reversal of the judgment. The court's charge does not assume, as appellant insists, that he had knowledge of the manner of movement of trains such as he was riding on, but the proper and fair interpretation of the charge is that the jury were to consider his knowledge of the manner of the movement of such trains which they believed from the evidence he had, whether the same be much or little. Nor does the repeated use of the words "even though" imply a doubt as to the truth of the fact stated in connection with such introductory words. It seems to us that any jury would readily understand from that portion of the charge that if they found appellant to be guilty of contributory negligence, as defined by the court, then their verdict would be for the defendant, although the acts of negligence alleged were fully proved.

The first special charge requested by appellant, raising the issue as to whether he was required by the appellee Fort Worth Stock Yards Belt Railway Company to ride in an unsafe place, appears not to have been justified under appellant's pleadings. We think the expression, "that degree of care for his personal safety which a very cautious and prudent person would have exercised under the same circumstances," used by the court in defining appellee's

duty toward appellant, equally as strong as the language of appellant's third special charge, in which the degree of care required is denominated "the highest degree of care that could reasonably be exercised to protect him from injury while he was such passenger."

For the reason given above the judgment is reversed and the cause remanded as to the Fort Worth Stock Yards Belt Railway Company, but as to the other defendants the judgment is affirmed.

*Affirmed in part, reversed in part.*

Conner, Chief Justice, not sitting.