### SUNSHINE OIL CORPORATION v. RANDALS. (No. 1149.)

(Court of Civil Appeals of Texas. El Paso. Jan. 6, 1921.)

1. Mines and minerals ☞78(7)—Whether well was in "same general locality" within oil lease a matter to be proved and determined by the jury.

Where an oil lease recited that it was one of several leases covering land in the same general locality and provided that, if the lessee began a well in such locality within one year and prosecuted it to completion with due diligence, the time employed should not be part of the time allowed for beginning operations on the particular land, and there was nothing else in the lease to indicate what was meant by the "same general locality," its meaning was to be proved and determined by the jury as a question of fact, and the court could not hold as a matter of law that a well 14 miles from the land in question was in the same general locality.

2. Mines and minerals ☞78(7) — Instruction submitting question whether drilling of oil well was prosecuted with due diligence properly referred to date of amended petition.

Where, in a suit to cancel an oil lease, an amended petition was filed on the day the trial was commenced, evidence was admissible as to whether the drilling of a well had been prosecuted with due diligence up to the date of the amendment, and an instruction submitting that question properly referred to such date instead of the date of filing of the original petition.

3. Trial ☞314(1)—Remarks of court when jury reported disagreement causing minority to yield held reversible error.

Where the jury reported that they could not agree and asked to be discharged and stated that they stood nine to three, the trial court's remarks that they might as well reach a decision, that it would save the cost of another trial, and that regardless of their verdict the case would go to the higher courts, shown to have caused the minority members of the jury to agree to a verdict contrary to their judgment, were reversible error.

Appeal from District Court, Reeves County; Chas. Gibbs, Judge.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Suit by Ben Randals against the Sunshine Oil Corporation. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

W. W. Bridgers, of El Paso, W. W. Beall, of Sweetwater, Hudson & Starley, of Pecos, W. P. Brady, of El Paso, and Jno. B. Howard, of Pecos, for appellant.

Ben Randals, of Pecos, in pro. per.

WALTHALL, J. Appellee, Ben Randals, instituted this suit against appellant, Sunshine Oil Corporation, to cancel an oil lease contract.

The contract is, substantially, as follows:

"The State of Texas, County of Reeves.

"Know all men by these presents:

"That this indenture entered into by and between Ben Randals of Reeves county, Texas, party of the first part, hereinafter referred to as the lessor, Jno. B. Howard and Alfred Tinally, of Reeves county, Texas, parties of the second part, hereinafter referred to as the lessees, witnesseth:

"That the lessor, for and in consideration of the sum of one dollar ($1.00) in hand paid by the lessees, the receipt of which is hereby acknowledged, of the promises of the lessees hereinafter contained and of the royalties to be paid and covenants to be kept hereunder, has granted, bargained, sold and conveyed, and does by these presents .grant, bargain, sell and convey unto the lessees, all the oil, gas, coal and other minerals of every kind and description, in and under the hereinafter described land, together with the exclusive right of ingress and egress at all times for the purpose of prospecting, drilling, mining and otherwise operating the same, and to erect, maintain and remove all structures and appliances in connection therewith, including the right to pull the piping from the wells, and to lay, maintain and remove all pipes and other means of transportation; reserving, however, the royalties and payments hereinafter stipulated. Said land situated in —— county, Texas, and more particularly described as follows, to wit:

"S. ½ Sec. 12, 320 acres and all of Sec. 10, 640 and all of Sec. 25, 640 acres all in Blk. 6, H. & G. N. Ry. Co.

"To have and to hold, unto the lessees, their heirs, executors, administrators, successors and assigns, forever, upon the following terms:

"1. If oil is found, the lessor shall receive as his share an equal one-eighth (⅛) part of all the oil and gas produced and saved upon the premises, said oil to be delivered at the wells, if demanded by the lessor, otherwise to be delivered to the credit of the lessor in the pipe line to which such well may be connected, free of all costs of production to the lessor.

"2. If coal is found, the lessor shall receive 25 cents per ton for every ton mined and marketed from said premises, payable quarterly, and if any other mineral or minerals shall be discovered and mined, the lessor shall receive as his share 5 per cent. of the net proceeds thereof.

"3. It is understood and agreed that the lessees are to have the free use of oil, gas and water from said land for development and operation purposes.

"4. If operations for the drilling of an oil or gas well be not begun on the land above described within one year from the final execution and delivery hereof, this conveyance shall be forfeited as to both parties, unless the lessees, or their successors or assigns, shall pay to the lessor on or before the anniversaries of this lease, according to the date written below, ten (10) cents per acre for the period operations are delayed but such vitality cannot be maintained by such payments for a greater delay than three years, without the written consent of the lessor. Payments as above provided for shall be deemed complete when made or tendered by a deposit of the amount to the credit of the lessor in the —— bank of Pecos, Texas.

"5. This instrument is one of several from different parties to the lessees, covering land in the same general locality. It is understood and agreed that if the lessees, or their successors or assigns, shall begin a well in said locality within one year from the date hereof, and having begun such well shall prosecute the same (or an additional one in lieu of the first, in event of an accident to the first) to completion with due diligence, then the time so employed shall not be computed as any part of the time allowed for the beginning of operations as described in paragraph 4 above; and no rentals shall accrue until the expiration of one year from the completion of said neighboring well.

"6. If the lessees, or their successors or assigns, shall sink a well or shaft and discover either oil, gas or any other mineral or minerals, on the above-described land within the limit of time herein provided for, this instrument shall be in full force and effect for a term as long as minerals are found and produced in paying quantities.

"7. The lessees shall not cut, break, tear down, remove or destroy any fence or fences, barbed wire or posts, on said land, or inclosing any portion thereof, without immediately repairing and replacing the same at their own expense.

"8. This instrument is not intended as a mere franchise but as a conveyance to the extent stated, and is so understood by both parties.

"9. The lessor, in the event oil is found in paying quantities, promises and obligates himself that he will at his own expense and cost perfect his title from the state of Texas and obtain from said state a patent to the above-described tract of land, and will pay all sums due or to become due to the state of Texas for the purchase of the same. The lessees, however, have the option of paying any encumbrance on said land and if the lessees elect to make such payments they are hereby authorized to reimburse themselves out of the royalties due the lessor as herein provided.

"10. The estate hereby granted and privileges hereby conferred may be assigned by the lessees, or successively assigned, and all covenants hereof shall extend to the assigns and successive assigns, their heirs, successors and legal representatives.

"11. The lessees agree: (a) to cause a geological survey of the said locality including the land above described for oil and gas production; (b) to cause to be organized a corporation with an authorized capital stock of 300,000 shares of the par value of $1.00 each, and to

transfer thereto this and other leases covering approximately 100,000 acres; (c) to transfer to the lessor one share of full-paid and nonassessable stock in said company for each 10 acres of land leased; (d) to use their best efforts to sell sufficient of said capital stock to thoroughly test said locality for oil and gas; (e) and to procure by said company the ratification and assumption of this lease and agreement.

"This lease agreement is executed in duplicate.

"Witness our hands this 15 day of May, A. D. 1918.                    Ben Randals,
                                 "Lessor.
                    "Jno. B. Howard,
                    "Alfred Tinally,
                                 "Lessees."

The above lease was duly acknowledged.

Appellee alleged the execution of the lease; that the lessees, Howard and Tinally, transferred the lease to appellant; and that appellant assumed the obligations of Howard and Tinally mentioned in the lease. As ground for canceling the lease contract, appellee alleged: That appellant has failed to pay the 10 cents per acre as stipulated in said lease contract; that appellant has not prosecuted the drilling of an oil or gas well with due diligence in the general locality of said lands; that the contract is unilateral in that the lessees are not bound to either begin or complete the drilling of a well for oil and gas within one year from the date thereof upon said lands, or any lands, or during the life of the lease under its extension provisions by the payment of the rentals, "nor are any covenants therein binding upon lessees to pay any rental, but for any default in the payment of rentals, or default in drilling operations when both concur forfeiture only as to both parties, that is, lessor and lessees, as is expressly provided, which renders said lease contract unilateral, and therefore null and void"; that the lease contract is a mere option for one year, conditional for three years, in the event of compliance by lessees with covenants and provisions in the lease; that paragraphs 4 and 5 of the lease are contradictory and opposed to the covenants of each other, and inconsistent with each other, in their material provisions, and are at best uncertain, ambiguous, and not plain, and do not express the true meaning, purpose, or intention of the parties thereto concerning the matters therein set out, which matters are material covenants of consideration moving to the execution of the contract; that the phrase "general locality," used in paragraph 5 of the lease, attempts to define a territory in which drilling operations may be begun, is wholly without meaning, uncertain, ambiguous, and contradictory, and for that reason void for uncertainty; that any right conveyed was only a conditional grant, subject to forfeiture for default by lessees to drill within one year on lands described, or pay the rental, neither of which was done; that the lease and all rights thereunder have been abandoned by the defendant by the failure to begin or to prosecute after beginning with diligence any well for the production of oil or gas, or to pay the rental; that defendant has not in good faith made any test or effort to develop oil and gas on plaintiff's lands, or any lands in the general locality of plaintiff's lands.

Appellant answered by general demurrer, special exceptions, general denial, and several special answers. The court overruled the general demurrer and all special exceptions, to which appellant duly excepted.

The evidence shows that within a year from the date of the lease appellant began drilling what is known as the Laura well about 14 miles distant from appellee's land and situated upon another tract of land leased to appellant by a third party. There is also evidence that the drilling of the Laura well has been prosecuted with due diligence.

The case was submitted to a jury under the general issue, resulting in a verdict and judgment for appellee.

[1] By the first assignment appellant complains of the fifth paragraph of the court's general charge to the jury. The paragraph reads:

"Now, if you find from the evidence that defendant did not begin a well for the development of oil upon lands in the general locality of plaintiff's lands within one year from May 15, 1918, or if you find that such well was so begun within said time limit, but further find that same was not prosecuted with due diligence as herein defined, then, and in either event, you will find for the plaintiff."

Appellant's contention under this assignment is that it was the duty of the court to construe the contract sued upon and to charge the jury that the Laura well, mentioned in the evidence, under the terms of the contract was on land in the general locality of appellee's lands, leaving only the question to be passed upon by the jury as to whether or not the work on the Laura well had been prosecuted with diligence.

The contract does not, in terms, specifically provide for the drilling of the Laura well, nor for the drilling of any well on the land on which the Laura well was located, so that the contract, as a matter of law, could be construed to mean that the Laura well, or any well located on the land as is the Laura well, was a well called for in the contract, or was a well drilled on "land in the same general locality" of appellee's lands. We think that unless the contract provides for the Laura well, or for a well to be drilled on the land on which the Laura well is located, or unless the contract defines what is meant by the expression used, "land in the same general locality" as appellee's lands, or, if not a definition of the above expression, then some statement in the contract it-

self, indicating the lands or territory embraced in the expression used, the expression would be ambiguous, that is, of dubious signification, or vague in its real meaning as to what the parties to the contract meant by the expression used, and it would be a matter of proof as to what land was meant to be in the same general locality as appellee's lands, therefore a question of fact to be determined by the jury under appropriate instructions.

We find nothing in the evidence, nor in the contract itself, which seems to us to so fix or establish the fact that the Laura well is on land in the same general locality as appellee's lands, as to require the trial court to instruct the jury that the Laura well, under the terms of the contract, as a matter of law, is on land in the same general locality of appellee's lands. The evidence shows that the Laura well is about 14 miles from the nearest point of appellee's lands.

In McCaskey v. Schrock, 225 S. W. 418, recently decided by this court, we had occasion to review a somewhat similar contract to the one presented here. The eighth paragraph of that contract recited:

"It is especially understood and agreed by and between the parties to this contract that the primary object hereof is to aggregate a large body of land in the same vicinity of sufficient acreage to permit development and prospecting for the production of oil, gas and other minerals; and it is further understood and agreed that this contract is one of a number of similar contracts executed by the several owners of land in said vicinity with said lessees, and that the consideration moving to each lessor is the general development of the section embraced within the scope of these leases, and the benefit which each lessor will derive from the exploration and prospecting of said land in said vicinity for oil, gas and other minerals. And as a further additional consideration moving to each of the several lessors (including the lessor in this contract) is the agreement and contract on the part of said lessees within one year to begin drilling and to prosecute with all reasonable diligence a well within the area of the block of land herein before mentioned, testing the said block of land for oil, gas and other minerals."

We must refer to the case mentioned above for the further facts of that case. The material issue in that case was whether or not the drilling of a well on the Bryant lease, some 16 miles from the Schrock lands, was a sufficient compliance with the lessee's covenant to drill a well on land in the vicinity of the Schrock lands. This court held that the contract describing the land upon which the well could be drilled as "land in said vicinity" was uncertain in identifying the particular lands which the parties had in mind upon which the vicinity well might be drilled; that the uncertainty, however, was not regarded as sufficient to render the contract wholly insufficient, but that it might be aided by extrinsic evidence

to show the meaning the parties gave to the expression "land in said vicinity," and, if it should be found from a consideration from all the facts and circumstances that the land upon which the Bryant well is situated is within the body of land contemplated by the parties to the Schrock lease, the uncertainty of the contract in the particular indicated would be removed, and the drilling of the Bryant well would comply with the covenant of the lessees. See 2 Parsons on Contracts (6th Ed.) p. 561. Also, Smith v. Ry. Co., 101 Tex. 409, 108 S. W. 819; Lynch v. Ortlieb & Co., 70 Tex. 727, 8 S. W. 515; Ry. Co. v. Jones, 63 Tex. 524; 1 Greenleaf on Evidence, §§ 282, 288.

[2] The second assignment claims error in giving the sixth paragraph of the court's general charge. The charge reads:

"If you find from the evidence that within one year from May 15, 1918, defendant began a well for the development of oil within the general locality of plaintiff's lands, and if you further find that such well, if any, was prosecuted with due diligence to this date, then and in that event you will find for the defendant."

The error insisted upon is that the charge required the drilling of a well with diligence to continue up to the date of the trial instead of up to the filing of the suit, there being no issue in the pleadings as to abandonment since the suit was filed.

The third amended original petition upon which the trial was had was filed April 27, 1920; the trial was commenced on that date, and the charge was filed and given to the jury on April 29, 1920. The allegation in the petition is that—

"The defendant * * * has not prosecuted the drilling of an oil or gas well with the due diligence," etc.

Under the allegation in the petition evidence as to diligence could be heard up to the filing of the amendment upon which the trial was had, and the charge, we think, should have reference to that date, rather than to the filing of the original petition.

[3] The third and last assignment is directed to remarks made by the trial judge to the jury when they came before him and reported that they could not agree on a verdict and asked to be discharged. On inquiry by the court as to how the jury stood numerically, the jury replied that they stood nine to three. In endeavoring to secure a verdict the trial judge made a statement to the jury substantially as follows:

"You (meaning the jury) might as well reach a decision as I expect you to do. It would save a cost of another trial or suit if the jury should agree. Regardless of your decision, and no matter how your verdict may be, or is rendered, the case will go to the higher courts."

The court then retired the jury to their room for further consideration. The jury shortly thereafter returned a verdict for

appellee. The above remark by the trial judge was made one of the grounds in the motion for a new trial. The court overruled the motion, the appellant excepted, and gave notice of appeal. The judge attaches a memorandum to the order overruling the motion for a new trial which reads:

"Be it remembered that the judge of the court has never been asked or called upon either in court nor out of court by the defendant nor its attorneys for any statement or explanation of the alleged misconduct of the court in urging the jury to agree upon a verdict."

The jurors were recalled, and upon oath testified, on the hearing of the motion for a new trial, as to their understanding and recollection of the above remarks. Their statements are lengthy and we need not reproduce them here. It is sufficient, however, to say that, while some of the jurors did not remember all of the remarks, several of them did, and those of the jurors who did, substantially state them to be as stated in the motion, and we find nowhere in the record a statement contradictory of that testified to by the jurors. The question then is presented: Regardless of the good intentions of the court in securing a verdict and avoiding a retrial of the case, do the remarks made present reversible error? We have concluded that they do. Without quoting the evidence of the jurors taken on the hearing of the motion for a new trial, it is made clear that the remarks of the court caused the minority members of the jury to agree to the verdict returned, although their judgment as to the facts found was not convinced and was contrary to the verdict returned. The law expects every juror to exercise his individual judgment, and that when a verdict is agreed to it will be the judgment of each individual juror. It is the individual judgment of each juror harmonizing with other jurors, which the law seeks to obtain. We need only to refer to the opinion of our Supreme Court as expressed in Gulf, C. & S. F. Ry. Co. v. Johnson, 99 Tex. 337, 90 S. W. 164. For the reason stated the case must be reversed.

The case is reversed, and the cause remanded.