Geraldine STEVENS, Individually and as
Administratrix of the Estate of Louis
Morris Stevens, Deceased, Petitioner,

v.

The TRAVELERS INSURANCE
COMPANY, Respondent.

No. B-7006.

Supreme Court of Texas.

Feb. 15, 1978.

Rehearing Denied March 8, 1978.

224

O. Joseph Damiani, Houston, J. Michael Cunningham, Midland, for petitioner.

Vinson & Elkins, Robert A. Rowland, III, Houston, for respondent.

STEAKLEY, Justice.

Louis Morris Stevens was killed on October 21, 1973, when the automobile he was driving crashed into a bridge abutment. He was insured in event of accidental death by the Travelers Insurance Company, Respondent here, through membership in the Exxon Travel Club, Inc. A beneficiary was not named in the policy. Our Petitioner, Geraldine Stevens, Individually and as Administratrix of the Estate of Louis Morris Stevens, sued to recover the proceeds of the policy. Travelers answered by denying that the death of Stevens was accidental, and alleged that he committed suicide.

A mistrial was declared in the first trial after the jury was unable to reach a verdict. In the second trial the jury, after deliberating four hours, sent a note to the Court as follows:

"Your Honor: We are deadlocked at 8 to 4 and have been for well over an hour. An individual poll of the jurors indicates there is no likelihood of a change. May we have your instructions?".

There followed an inconclusive conference of the court with counsel for both parties in chambers. The court then orally gave the jury a supplemental charge, his recollection of which, as modified at the instance of counsel for Travelers, was dictated into the record nunc pro tunc, as follows:

"Ladies and Gentlemen of the jury, I have your note that for the past hour you have been deadlocked by a vote of 8 to 4. You request further instructions. This Case has been ably tried by lawyers, experienced, of long standing, and in the interest of justice, if you could end this litigation by your verdict, you should do so.

"What is more, ending it will meet with the approval of the Court. I don't mean to say by that that any individual person on the jury should yield his own conscience and positive conviction, but I do mean that when you are in the jury room, you should discuss this matter among yourselves carefully and listen to each other, and try, if you can, to reach a conclusion on the issues. It is the duty of jurors to keep their minds open and free to every reasonable argument that may be presented by fellow jurors that they may arrive at the verdict which justly answers the consciences of the individuals making up the jury. A juryman should not have any pride of opinion, and should avoid hastily forming or expressing an opinion. He should not surrender any conscientious views founded upon the evidence unless convinced by his fellow jurors of his error.

"It has cost the taxpayers of Harris County considerable expense to have this case tried before a Jury over the past week.

"I am satisfied ladies and gentlemen that you have not deliberated sufficiently so that, in good conscience, I can accept a

report that you cannot arrive at an agreement. It will take considerably more time before anyone can satisfy me as to that. Accordingly, I return you to your deliberations." [1]

The jury then deliberated 20 minutes and asked to be excused for the weekend. The jury reconvened the following Monday morning and, after deliberating approximately four hours returned a verdict, concurred in by ten jurors, in which it was found that the death of Stevens was caused by accident and that it was not caused by suicide. Based thereon, the trial court entered judgment for Mrs. Stevens. Upon appeal, the Court of Civil Appeals, citing *Texas Midland R.R. v. Brown*, 228 S.W. 915 (Tex.Com.App.1921) and *Missouri, K. & T. Ry. of Texas v. Barber*, 209 S.W. 394 (Tex. Com.App.1919), ruled that the supplemental charge was coercive to the minority jurors and impermissible. Citing also *Gulf, C. & S.F. Ry. Co. v. Johnson*, 99 Tex. 337, 90 S.W. 164 (1905), the Court of Civil Appeals emphasized that it is improper for a court to advise the jurors on the manner in which they are to reach their verdict. The judgment of the trial court was reversed and the cause remanded for another trial. 553 S.W.2d 232. We reverse the judgment of the Court of Civil Appeals and affirm that of the trial court.

The essential position of Mrs. Stevens is that *Johnson* and *Brown* are distinguishable because the charges there condemned were not given here. She concedes that *Barber* is in point in condemning an instruction on

wastefulness but argues that the decision is out of harmony with the realities of today's world and should be overruled.

The essential position of Travelers is that all instructions which urge the jury to return a verdict should be declared to be impermissible as coercive on jurors of the minority in the announced deadlock. It argues that under all such charges the minority will feel more pressure to conform to the views of the majority than the latter to the views of the former; that such charges place the sanction of the court upon the majority; and that these types of charges constitute judicial interference in the fact finding process. Travelers further contends that this particular charge conflicts with the decisions in *Johnson, Brown,* and *Barber.*

## I. VERDICT–URGING INSTRUCTIONS IN GENERAL

Instructions such as that here in question have often been referred to as "dynamite" or "Allen" charges. The first reference is to the supposed effect of the charge; that is, to "blast" a jury from deadlock to verdict. The second reference is to the charge approved in *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). In *Allen*, a criminal prosecution, the U. S. Supreme Court approved a charge which instructed the members of the minority of a deadlocked jury to reconsider their position in light of the fact that a larger number of their panel were of the opposite view. The particular charge in *Allen* [2] has been the subject of much critical commentary since

---

1. Under Rule 286, Tex.R.Civ.P., the supplemental charge should have been given in writing and not orally. The rule reads:

> After having retired, the jury may receive further instructions of the court touching any matter of law, either at their request or upon the court's own motion. For this purpose they shall appear before the judge in open court in a body, and if the instruction is being given at their request, they shall through their foreman state to the court, in writing, the particular question of law upon which they desire further instruction. The court shall give such instruction in writing, but no instruction shall be given except in conformity with the rules relating to the charge. Ad-

ditional argument may be allowed in the discretion of the court.

2. The charge approved in *Allen* was taken verbatim from the Massachusetts decision in *Commonwealth v. Tuey*, 62 Mass. 1 (1851) and read as follows:

> "The only mode, provided by our constitution and laws for deciding questions of fact in criminal cases, is by the verdict of a jury. In a large proportion of cases, and perhaps, strictly speaking, in all cases, absolute certainty cannot be attained or expected. Although the verdict to which a juror agrees must of course be his own verdict, the result of his own convictions, and not a mere acquiescence in the conclusion of his fellows, yet, in order to bring twelve minds to a unani-

its approval and appears now to have been rejected by a majority of jurisdictions for use in criminal cases. *See*, e. g., *People v. Gainer*, 139 Cal.Rptr. 861, 566 P.2d 997 n. 8 (Cal.1977); Note, 50 Tulane L.Rev. 706 (1976); *The Allen Charge Dilemma*, 10 Am.Crim.L.Rev. 637 (1972); Note, 53 Va.L.Rev. 123 (1967); WIEHL, Instructing A Jury in Washington, 36 Wash.L.Rev. 378 (1961); Note, 25 Vand.L.Rev. 246 (1972); Note, 25 Ark.L.Rev. 542 (1972); Note, 13 W. & M.L. Rev. 672 (1972). *See also*, ABA Standards Relating To Trial By Jury, § 5.4 (Project on Minimum Standards for Criminal Justice, 1968).[3]

Instructions other than the particular "Allen Charge" which, in less objectionable terms, urge juries to return verdicts have also been the subject of extensive litigation and commentary. *See*, e. g., cases collected in Annot. 38 A.L.R.3d 1281 (1971); Annot. 41 A.L.R.3d 845 (1972); Annot. 41 A.L.R.3d 1154 (1972). *See also*, Comment, INSTRUCTING DEADLOCKED JURIES: THE PRESENT STATUS OF THE ALLEN CHARGE, 3 Tex.Tech.L.Rev. 313 (1972); Note, 9 Hous.L.Rev. 570 (1972); Note, 78 Yale L.Rev. 100 (1968). These less overtly coercive instructions are used in both criminal and civil cases and, except as to the requirement of unanimous verdicts in criminal prosecutions, are essentially similar. It appears that in civil cases a majority of jurisdictions do not prohibit such in-

mous result, you must examine the questions submitted to you with candor, and with a proper regard and deference to the opinions of each other. You should consider that the case must at some time be decided; that you are selected in the same manner, and from the same source, from which any future jury must be; and there is no reason to suppose that the case will ever be submitted to twelve men more intelligent, more impartial, or more competent to decide it, or that more or clearer evidence will be produced on the one side or the other. And with this view, it is your duty to decide the case, if you can conscientiously do so. In order to make a decision more practicable, the law imposes the burden of proof on one party or the other, in all cases. In the present case, the burden of proof is upon the commonwealth to establish every part of it, beyond a reasonable doubt; and if, in any part of it, you are left in doubt, the defendant is entitled to the benefit of the doubt, and must be acquitted. But, in conferring together, you ought to pay proper respect to each other's opinions, and listen, with a disposition to be convinced, to each other's arguments. And, on the one hand, if much the larger number of your panel are for a conviction, a dissenting juror should consider whether a doubt in his own mind is a reasonable one, which makes no impression upon the minds of so many men, equally honest, equally intelligent with himself, and who have heard the same evidence, with the same attention, with an equal desire to arrive at the truth, and under the sanction of the same oath. And, on the other hand, if a majority are for acquittal, the minority ought seriously to ask themselves, whether they may not reasonably, and ought not to doubt the correctness of a judgment, which is not concurred in by most of those with whom they are associated; and distrust the weight or sufficiency of that evidence which fails to carry conviction to the minds of their fellows."

**3.** The standard recommended by the ABA Criminal Justice Project is a well reasoned modification of the original *Allen* charge. That standard reads as follows:

5.4 Length of deliberations; deadlocked jury.

(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

(i) that in order to return a verdict, each juror must agree thereto;

(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement.

structions as a matter of course; but rather analyze the propriety of a particular charge by its terms, and in the light of the circumstances under which it was given. *See, e. g., Taylor v. Murray*, 102 Ga.App. 145, 115 S.E.2d 776 (Ga.App.1960). See generally cases collected in Annot. 38 A.L.R.3d 1281, 1291–96 (1971).

At least one commentator has read our decision in *Gulf, C. & S.F. Ry. Co. v. Johnson, supra*, as a possible bar to all verdict-urging instructions. *See* Annot. 38 A.L.R.3d 1281 at 1290; Annot. 41 A.L.R.3d 845 at 854; Annot. 41 A.L.R.3d 1154 at 1164. We do not so interpret the case. *Johnson* involved an inquiry, made after two days of fruitless deliberation, in which the jury asked whether it was ". . . legal and right for a jury, in case they have failed to agree upon a verdict in a case, to make concessions in order to agree upon a verdict?" The trial judge, in response, instructed the jury that ". . . it is entirely lawful and proper to make concessions, provided, of course, your verdict, as agreed to, is based alone upon the law as given in the charge and the facts as you find them from the evidence." This court held the instruction was impermissible. The basis for this holding was not that the charge coerced a verdict from an unwilling jury; but, rather, it was that the instruction invaded a forbidden area when it addressed the subject of concessions and compromises in the jury room. This rationale is not a blanket condemnation of verdict-urging instructions but is a condemnation of the charge as it was given. Quoting from *Richardson v. Coleman*, 131 Ind. 210, 29 N.E. 909 (1892), the court said:

> The fundamental objection to such instructions is that the law, in our opinion, prescribes no rule for the court to lay down, except that the jury are to find in accordance with the truth as their judgments, honestly applied to the evidence, lead them to believe it to be, or, as their oath expresses it, 'that they will a true verdict render according to the law . . and the evidence.'

90 S.W. at 165.

Although there is no precedential restriction on the authority of trial judges to give properly worded verdict-urging instructions, the serious questions presented by Travelers' argument that all such charges are inherently coercive must be considered before their continued use is sanctioned.

█ Any supplemental charge, such as the original *Allen* charge, which is addressed specifically to the minority jurors of a deadlocked panel is expressly and inherently coercive. With this conclusion Travelers would agree; but Travelers would then contend that a supplemental charge, not coercive by its terms, is made coercive by the mere fact that it is given. Travelers argues that the minority juror is already under pressure by being in the minority; and that any verdict-urging instruction places additional, and impermissible, pressure on him to alter his position for the sole purpose of reaching a verdict. This argument is unavailing. The relationship of judge to jury is a complex and contradictory one. The two entities are equal in function; that is, the former is the exclusive judge of the law, while the latter is the exclusive finder of fact. At the same time, a superior-inferior relationship exists between the two. The judge is the supervisor of judicial proceedings. *See, generally,* POPE, The Judge-Jury Relationship, 18 Sw. L.J. 46 (1964). This fact is well known by juries and is reinforced by the instructions given them before and after they are impaneled. Rule 226a, Tex.R.Civ.P. Our law does not contemplate that every jury will function perfectly and, to that end, broad discretion is vested in the trial judge to aid in administering and expediting the fact finding process. It is this concern for the expeditious administration of justice that must be balanced against the concern for impartiality in the fact finding process in determining whether it is proper for judges to insert themselves into that process at all.

█ There is admitted substance in the thesis that minority jurors more often than not are disproportionately influenced by supplemental instructions urging the jury to reach a verdict. This consideration, how-

ever, is more than counterbalanced by the fact that jurors are aware of the function of the trial judge as an administrator and the fact that the instructions given to them are based upon the experiences of the judge with other juries. We conclude, therefore, that even though there is a latent danger of coercion, supplemental, verdict-urging instructions are not, in and of themselves, erroneous, so long as the particular charge given is not otherwise objectionable.

## II. THE PRESENT CHARGE

The propriety of verdict-urging instructions in Texas have heretofore been governed by the decisions in *Johnson, Brown* and *Barber, supra.* As noted above, *Johnson* involved a charge which told the jury that it was lawful to make concessions. As also noted, the court in *Johnson* struck the charge on the ground that it invaded an impermissible area. In *Missouri, K. & T. Ry. of Texas v. Barber, supra*, the Commission of Appeals invalidated a supplemental charge as coercive because it insisted on a verdict to avoid waste of the taxpayers' money; because it insisted on a verdict to avoid personal inconvenience to the jurors; and because it failed to advise the jury not to reach a verdict if it was not the personal conviction of all those voting for it. *Texas Midland R.R. v. Brown, supra*, involved a charge given by a temporary judge called in to replace the trial judge who had become unavailable. The Commission of Appeals disapproved of the supplemental charge given by this judge because it was coercive to instruct the jury that it was his practice to keep juries together until they reached a verdict; that it would be a great disappointment to the judge who tried the case if the jury failed to agree; and that it would be a waste of the proceeding if no verdict was reached. It is apparent that the instruction here under review will not survive if these decisions, particularly *Brown* and *Barber*, are given full measure. In his instructions here, the trial court emphasized the cost to the taxpayers of the proceeding,

and indicated his approval if the jury ended the litigation by reaching an agreement.

We are not content, however, to determine the question before us by a literal extension of the language in these cases. The decision in each of these cases was rested on the particular wording used in instructions given by the trial judge after the jury reported disagreement. There was no consideration of the context in which the instructions were given, or of the timing of the instructions in relation to the later verdict. We find that several Courts of Civil Appeals have considered all of the circumstances surrounding the rendition and effect of a verdict-urging instruction when passing on its validity. *Western Union Telegraph Co. v. Oakley*, 181 S.W. 507 (Tex. Civ.App.1916, no writ); *Cornelison v. Fort Worth & R.G. Ry. Co.*, 403 Tex.Civ.App. 509, 103 S.W. 1186 (1907, no writ); *Burgess v. Singer Mfg. Co.*, 30 S.W. 1110 (Tex.Civ. App.1895, no writ). *See also, Youngblood v. Wilson & Cureton*, 321 S.W.2d 887 (Tex.Civ. App.1959, writ ref'd n. r. e.); *Hunter v. Hunter*, 187 S.W. 1049 (Tex.Civ.App.1916, writ dism'd); *Quigley v. Gulf, C. & S.F. Ry. Co.*, 142 S.W. 633 (Tex.Civ.App.1911, no writ); *Texas Cent. R. Co. v. Driver*, 187 S.W. 981 (Tex.Civ.App.1916, no writ). We conclude that the better rule is found in these cases. Words of instruction in one context and time frame may be coercive but in another may be no more than a permissible effort on the part of the trial judge to bring the deliberations of the jury to a conclusion in a manner fair to the litigants.

■ Therefore, in order to test a particular charge for coerciveness, it is necessary that the charge be first broken down into its several particulars and analyzed for possible coercive statements. A possibly coercive statement will not invalidate the charge, however, unless it retains its coercive nature when the charge is then read as a whole and all of the circumstances surrounding its rendition and effect are considered.

## A.

### THE CHARGE IN PARTICULARS

The charge here given can be divided into five parts, each of which must be tested individually.[4]

### 1.

"This Case has been ably tried by lawyers, experienced, of long standing, and in the interest of justice, if you could end this litigation by your verdict, you should do so."

 This statement, taken alone, is innocent and not coercive. It does no more than call to mind again the oath of the jury and the purpose for which trials are held. The comment that the case had been ably tried by experienced lawyers could not affect the deliberations in one way or another, as it is but a neutral observation. The reference to a verdict in the interest of justice is likewise neutral and unobjectionable.

### 2.

"What is more, ending it will meet with the approval of the Court."

 Standing alone this statement is in direct conflict with the decision in *Brown*. An instruction that the court will be displeased with a non-productive jury is an implicit threat. As noted above, the jury cannot but be aware of the role of the trial judge and his power over them. This knowledge has been enhanced over the course of the trial and has been even fur-

ther solidified by the realization that only the judge can allow them to end their deliberations and return to their normal affairs. For these reasons, the rule in *Brown* is well-based and this statement may be classified as possibly coercive.

### 3.

"I don't mean to say by that that any individual person on the jury should yield his own conscience and positive conviction, but I do mean that when you are in the jury room, you should discuss this matter among yourselves carefully and listen to each other, and try, if you can, to reach a conclusion on the issues. It is the duty of jurors to keep their minds open and free to every reasonable argument that may be presented by fellow jurors that they may arrive at the verdict which justly answers the consciences of the individuals making up the jury. A juryman should not have any pride of opinion, and should avoid hastily forming or expressing an opinion. He should not surrender any conscientious views founded upon the evidence unless convinced by his fellow jurors of his error."

It was this portion of the instruction which the Court of Civil Appeals found to be violative of the rule announced in *Gulf, C. & S. F. Ry. Co. v. Johnson, supra,* and followed in *Reed v. Bates,* 32 S.W.2d 216 (Tex.Civ.App.1930, no writ). We note first that the instruction in *Reed* was given *prior* to the retirement of the jury.[5] We further

---

**4.** At the outset we note that several problems relating to verdict-urging instructions are not here presented. There is no question concerning colloquy between the judge and individual jurors. *See Foreman v. Texas Employers' Ins. Assn.,* 150 Tex. 468, 241 S.W.2d 977 (1951); *Spring Branch Bank v. Wright,* 404 S.W.2d 659 (Tex.Civ.App.1966, writ ref'd n. r. e.). Nor is there a question concerning the coercive effect of repeatedly returning a jury to deliberate further. *See, Conrey v. McGehee,* 473 S.W.2d 617 (Tex.Civ.App.1971, writ ref'd n. r. e.); *Kimbriel Produce Co. v. Webster,* 185 S.W.2d 198 (Tex. Civ.App.1944, writ ref'd w. o. m.); *Pantazis v. Dallas Ry. & Terminal Co.,* 162 S.W.2d 1018 (Tex.Civ.App.1942, writ dism'd); *Dallas Ry. & Terminal Co. v. Horton,* 119 S.W.2d 122 (Tex. Civ.App.1938, writ dism'd); *State v. Black,* 14

S.W.2d 72 (Tex.Civ.App.1929, no writ). Likewise, there is no comment by the trial judge regarding the certainty of appeal. *See, Renn v. Samos,* 42 Tex. 104 (1875); *Sunshine Oil Corp. v. Randals,* 226 S.W. 1090 (Tex.Civ.App.1921, no writ). Our decision today will not affect these decisions except as to clarify the method for their analysis.

**5.** Presently no provision is made in Rule 226a or its accompanying order for the inclusion of a pre-deliberation instruction of this kind. We note that in federal criminal cases it is suggested that the following instruction be included in the court's charge:

"It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so with-

note that in both *Johnson* and *Reed* the instructions specifically mentioned the right or duty of the jury to make concessions or reconcile differences. *See also, Pecos & N. T. Ry. Co. v. Finklea*, 155 S.W. 612 (Tex.Civ. App.1913, no writ); *Texas Midland R. R. v. Byrd*, 41 Tex.Civ.App. 164, 90 S.W. 185 (1905, no writ); and *Cornelison v. Fort Worth & R. G. Ry. Co.*, 46 Tex.Civ.App. 509, 103 S.W. 1186 (Tex.Civ.App.1907, no writ). The charge here given does not possess this flaw and the cited cases are, therefore, inapposite.

■ Moreover, this charge is not erroneous as given because by its wording it does no more than advise the jury that they are to conduct themselves in a reasonable and mature manner. The charge specifically warns against an individual juror surrendering a conscientious conviction and thereby is further insulated from the taint of coercion. Standing alone, therefore, this part of the charge is not coercive.

### 4.

"It has cost the taxpayers of Harris County considerable expense to have this case tried before a Jury over the past week."

out violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict."

27 F.R.D. 46, 97 (1961).

We do not, by this opinion, alter Rule 226a or our order accompanying it; but, rather, set out the federal instruction by way of example only.

6. Our holding today serves to revitalize the instruction given in *Houston & T. C. R. R. Co. v. Darwin*, 105 S.W. 825 (Tex.Civ.App.1907, writ ref'd). That instruction, while not a model of brevity, is set forth below for the purposes of example only:

Gentlemen of the Jury: I judge from the expression of several of the jurors yesterday evening that some of you were getting impa-

■ On its face, and standing alone, this statement is in direct conflict with the rulings in *Barber* and *Brown*. See also, *Baldwin v. Morton*, 19 S.W.2d 948 (Tex.Civ. App.1929, no writ); *Sunshine Oil Corp. v. Randals*, 226 S.W. 1090 (Tex.Civ.App.1921, no writ); *Hunter v. Hunter*, 187 S.W. 1049 (Tex.Civ.App.1916, writ dism'd); *Wootan v. Partridge*, 39 Tex.Civ.App. 346, 87 S.W. 356 (1905, no writ); *North Dallas Circuit Ry. Co. v. McCue*, 35 S.W. 1080 (Tex.Civ.App. 1896, no writ). Cf. *Cloudt v. Hutcherson*, 175 S.W.2d 643 (Tex.Civ.App.1943, writ ref'd w. o. m.); *Pecos & N. T. Ry. Co. v. Finklea*, 155 S.W. 612 (Tex.Civ.App.1913, no writ). *See, contra, Fleck v. Missouri, K. & T. Ry. Co.*, 191 S.W. 386 (Tex.Civ.App.1916, no writ); *Leland v. Chamberlin*, 120 S.W. 1040 (Tex.Civ.App.1909, no writ); *Houston & T. C. R. R. Co. v. Darwin*, 47 Tex.Civ.App. 219, 105 S.W. 825 (1907, writ ref'd). These decisions are no longer viable, however, given the instructions which are prescribed by Rule 226a. In accordance with that rule, prospective jurors are cautioned that failure to follow the instructions of the judge could result in a retrial of the case and the attendant waste of time and expense to the litigants and the county. A supplemental charge which merely reiterates this instruction is not coercive. *Barber* and *Brown* are overruled to this extent.[6] In so doing we

tient because you have not readily come to a verdict, and I want to say to you not to get discouraged at your delay in reaching a verdict, but work along just exactly like we have worked in the trial of the case. The only way the business of the court can be dispatched is by verdicts. Of course, if you should not be able to agree, the court will not keep you together any unreasonable length of time, but it is its duty to give you a fair opportunity to agree upon a verdict before discharging you, and it often takes some time for jurors to fully consider a case so as to arrive at one, but if you, gentlemen, were to get bullheaded with one another, and would not reason together in an effort to arrive at a verdict, then of course, there would be no reason in keeping you together longer. Twelve independent thinking men can only arrive at a verdict usually by discussing the subject before them openly and freely, and it takes time to do this, and by such discussions they arrive at the common ground upon which all can stand or finally disagree, as the case may be. I should dislike for any of you to believe the man who said the horse was 16 feet high, and

do not approve or sanction such a charge; rather, we hold that if it is given, it is not, without more, coercive.

### 5.

"I am satisfied ladies and gentlemen that you have not deliberated sufficiently so that, in good conscience, I can accept a report that you cannot arrive at an agreement. It will take considerably more time before anyone can satisfy me as to that. Accordingly, I return you to your deliberations."

 This statement, Travelers argues, threatened the jury with indeterminate confinement and was, therefore, coercive. A genuine threat to unreasonably detain a deliberating jury would, of course, be coercive. *See, e. g., North Dallas Circuit Ry. Co. v. McCue*, 35 S.W. 1080 (Tex.Civ. App.1896, no writ); Cf., *Western Union Telegraph Co. v. Oakley*, 181 S.W. 507 (Tex. Civ.App.1916, no writ); *Hunter v. Hunter*, 187 S.W. 1049 (Tex.Civ.App.1916, writ dism'd); *Burgess v. Singer Mfg. Co.*, 30 S.W. 1110 (Tex.Civ.App.1895, no writ). Where, as here, however, the charge informs the jury only that the judge cannot, consistent with his duties, discharge them, it is not coercive. As noted above, the jury is aware of the power and function of the trial judge and this portion of the charge only reminds them of his duties and functions. Again, we do not approve this portion of the instruction as a desirable element of a supplemental charge; but hold that it is not coercive.

### B.

### THE CHARGE AS A WHOLE

 Because we have found a portion of the charge to be possibly coercive when standing alone, it is necessary to examine the charge as a whole and the circumstances surrounding it in order to properly gauge its effect. As to the charge itself, we note that immediately after the judge erroneously indicated that he would disapprove of a failure to reach a verdict, he cautioned the jury not to forsake their personal convictions. This admonition had the effect of diluting the coercive nature of the previous statement and rendering it unobjectionable. This conclusion is buttressed by the fact that the jury did not come to an agreement until it had adjourned over the weekend and then only after deliberation the following Monday for approximately four hours. We hold that the charge as a whole did not have a coercive effect upon the jury and that the Court of Civil Appeals erred in its conclusion that the charge was coercive and changed the vote of the jurors in the minority.

---

then stick to it because he had said that first. I would not say anything to influence either to arrive at a verdict, or as to what your verdict should be; but it is sometimes the case when we find others differ from us that we begin to ask ourselves why it is. We concede that those who differ from us are just as honest and sincere and know as much as we ourselves do about the matter, and this naturally puts one to thinking why this is, and in that way sometimes we come to the conclusion that our first impressions were wrong. It is no reflection on a man that after seeing a matter one way he is enabled to see it in another. The highest courts in the country, after deciding questions sometimes find out they are wrong after further investigation, and change their opinions, and jurors are exclusive judges of the facts and should arrive at conclusions after a thorough discussion of the matter before them, and I would not have you become discouraged because you have not reached a conclusion as promptly as some of you perhaps think you should and give up. We often reason out a thing by studying over it that at first seemed impossible. I suggest to you that you go over these matters thoroughly and patiently, and do not think for a moment that the court is trying to force a verdict from you, because it is not, and it has the greatest confidence in you, but only desires to caution you against impatience or giving up. It may sometimes occur that after a matter for some time the jurors might become tired, and, if such is the case, you might take a rest, and that may enable you to get into new channels of thought and out of the old rut if you should happen to be in any particular line of thought. You may retire.

## III. COUNTERPOINTS

 Travelers also presents ten points labeled "counterpoints" [7] complaining of the judgment of the Court of Civil Appeals, the first five of which present legal sufficiency points; if sustained, these points would require rendition of judgment in its favor. The Court of Civil Appeals expressly ruled that the verdict of the jury was supported by sufficient evidence and Travelers does not attack this ruling by Application for Writ of Error. See *Pruitt v. Republic Bankers Life Ins. Co.*, 491 S.W.2d 109 (Tex. 1973); also, CALVERT & HATCHELL, Some Problems of Supreme Court Review, 6 St. Mary's L.J. 303 (1974).

 The remaining "counterpoints" urged by Travelers complain of the failure of the Court of Civil Appeals to consider various points of error there urged. In these, Travelers asserted error of the trial court in submitting a special issue inquiring if the jury found from a preponderance of the evidence that the death of Louis Morris was caused by suicide; that the trial court erred in overruling its motion for new trial based upon the ground that the supplemental charge was given orally rather than in writing; that the trial court erred in overruling Travelers' Motion for New Trial because it was not given an opportunity to inspect and make written objections to the supplemental charge; and that the trial court erred in overruling Travelers' Motion for New Trial on the ground of jury misconduct during its deliberations. We have considered individually each of these "counterpoints" and find them to be without serious merit.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

---

7. Counterpoints are not proper points on appeal. An Application for Writ of Error contains Points of Error. An answer to an Application can contain Reply Points or Cross Points or both. See *Jackson v. Ewton*, 411 S.W.2d 715 (Tex.1967); see also CALVERT & HATCHELL, Some Problems of Supreme Court Review, 6 St. Mary's L.J. 303 (1974).