

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00019-CV

———————————————

IN RE: THE COMMITMENT OF GREGORY A. JONES

On Appeal from the 89th District Court
Wichita County, Texas
Trial Court No. 185,786-C

Before the En Banc Court
Opinion on En Banc Reconsideration by Justice Wallach
Dissenting Opinion on En Banc Reconsideration by Chief Justice Sudderth (joined by Justice Bassel)

## OPINION ON EN BANC RECONSIDERATION

### Introduction

We grant the State's Motion for Reconsideration En Banc, withdraw our opinion and judgment of May 6, 2021, and substitute this opinion on en banc reconsideration.

This is our second time to consider this sexually-violent-predator civil-commitment case. In Jones's first appeal, we held that the trial court reversibly erred by refusing to give a nonunanimity instruction to the jury, and we remanded the case for a new trial. *See In re Commitment of Jones*, 571 S.W.3d 880, 881 (Tex. App.—Fort Worth 2019) (*Jones 1*), *rev'd*, 602 S.W.3d 908 (Tex. 2020) (op. on reh'g) (*Jones 2*). Though the Texas Supreme Court agreed that the trial court erred, it disagreed with our harm assessment and remanded the case for our consideration of Jones's remaining issues. *Jones 2*, 602 S.W.3d at 914–15. It specifically directed our attention to the *Allen* charge given to the jury, *id.*, which is Jones's Issue 5 on remand. Having considered the record as a whole, we hold that there was no reversible error in the *Allen* charge given by the trial court.

Jones raises four other issues for consideration. In Issue 1, Jones challenges the trial court's admission of expert-opinion "basis" evidence under Rule 705(d) of the Texas Rules of Evidence, contending that it could only have been admitted for its truth for it to have had any evidentiary value, making this evidence inadmissible even under Rule 705(d). In Issue 2, Jones contends that even if the "basis" evidence was

admissible, it lacked guarantees of reliability and trustworthiness contrary to Rule 703 of the Texas Rules of Evidence. In Issues 3 and 4, Jones challenges the legal and factual sufficiency of the evidence to support a beyond-a-reasonable-doubt finding that Jones has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. We overrule Jones' Issues 1 through 5, deny his Motion to Set Aside Order Granting State's Motion for En Banc Reconsideration, and affirm the judgment of the trial court.

## I. Background

### A.    The jury's verdict

We adopt the in-depth discussion of facts presented in our 2019 opinion. *See Jones 1*, 571 S.W.3d at 881–87. We offer the following summary to briefly recap the relevant facts:

Jones has an extensive criminal history involving multiple sex offenses. He has been convicted twice of attempted sexual assault, three times of assault, and once of burglary with intent to commit an assault. Each of those convictions resulted from Jones's entry of a guilty plea. Despite his guilty pleas, Jones denied any guilt for those crimes when examined in preparation for these civil commitment proceedings and when he testified in person at the final trial, at times giving wildly implausible excuses of how events were allegedly misconstrued. *See id.* at 882–84.

According to psychologist Jason Dunham, who evaluated Jones and testified as an expert at trial, Jones was suspected by Arlington Police in twelve additional

3

uncharged assaults, including one in which a man sexually assaulted a woman at knifepoint in an apartment laundry room and then forced her to walk back to her apartment naked. Dunham also testified about a police-report note indicating Jones stated he enjoyed seeing women's surprised looks when he grabbed them inappropriately.

All of Jones's victims were strangers to him. Dunham and the second testifying expert, psychiatrist Sheri Gaines, noted this as a significant risk factor indicating the possibility of a sexual behavioral abnormality, especially when combined with Jones's use of force and weapons, commission of offenses in public places, and complete denial of guilt and lack of remorse. In addition to the nature of his crimes, the experts considered his "hypersexual nature," his refusal to acknowledge a need for sex-offender treatment, and his nonsexual criminal history, which included assaulting his ex-wife. Based upon their reviews of his past crimes (both charged and suspected), their in-person evaluations of him, and actuarial testing,[1] Dunham and Gaines each concluded that Jones suffers from a behavioral abnormality indicating a likelihood of committing sex offenses in the future.

After hearing the testimonies of Dunham, Gaines, and Jones in one day, the jury was released for the evening. The following morning, the trial court read the charge to the jury, the parties made their closing arguments, and the jury began

---

[1] *See Jones 1*, 571 S.W.3d at 886 (describing actuarial testing conducted in this case).

deliberating at 10:49 a.m. At 11:37 a.m., the jury sent a note asking for a definition and a transcript of certain testimony, to which the trial court responded that it could not provide the definition and instructed that to receive a transcript of testimony, the jury had to express a disagreement regarding that testimony. At 12:01 p.m., the jury sent a follow-up note regarding the sought-after testimony, but the trial court responded that the court reporter was unable to locate responsive testimony. At 12:27 p.m., the jury sent a third note, this time requesting the actuarial tests administered by Dunham or, in the alternative, a transcript of Dunham's testimony regarding the tests. Again, the trial court responded that it could not provide a transcript of Dunham's testimony unless the jury first stated that it disagreed regarding testimony. At 2:07 p.m., the jury sent a fourth note asking, "Can we get something to eat?" The record is silent as to the trial court's response, if any, and whether the jury was fed.[2]

At 4:15 p.m., the jury sent its fifth note, informing the court, "We are unable to come to a unanimous decision. How shall we proceed?" At the State's request and over Jones's objections,[3] the trial court issued the following *Allen* charge at 4:49 p.m.:

---

[2]The parties disagree on appeal about whether the jury was fed or given a break to eat.

[3]Jones objected to the *Allen* charge as placing undue pressure on the jury to deliberate further after having already deliberated for six hours, violating jurors' consciences and individual votes by leaving them "feeling compelled to give up their individual vote[s] in order to avoid continued confinement," violating Jones's right to a fair and impartial trial because of its coercive nature, and being coercive by asserting that "they [the jurors] should and could resolve the matter and that the Court hopes that they will" and by imploring them to act "in the best interest of society."

5

This case has to be settled by some twelve jurors. I regard all of you as honest and intelligent jurors. I do not know of any twelve jurors who can do better than you can. I think you can settle it, and you should settle it, if possible.

I have no desire to attempt to coerce you into a verdict. This is a matter for each of you to determine for yourself, but it is to the interest of society that you should reconsider your differences, and if you can, agree upon a verdict.

You will please return to your room, and if you can reconcile your differences and agree upon a verdict, I hope you will please do so.

The jury immediately requested a break from deliberations, a request the trial court granted while noting the jury had "been in there for six hours." The jury returned to deliberations at 5:20 p.m. and issued its verdict against Jones at 6:35 p.m., almost eight hours after beginning deliberations. The trial court entered judgment accordingly, holding Jones to be a sexually violent predator in need of indefinite civil commitment subject to biennial review. *See* Tex. Health & Safety Code Ann. § 841.102.

**B.    Our decision and the Supreme Court's reversal**

Jones appealed the trial court's decision. One of his five issues asserted that the trial court erroneously refused to give a non-unanimity instruction to the jury—one instructing that it could render a verdict in Jones's favor non-unanimously, by a vote of 10–2. *Jones 1*, 571 S.W.3d at 889. Construing Section 841.062 of the Health and Safety Code and Rule 292 of the Rules of Civil Procedure, we agreed with Jones. *Id.* at 889–91.

6

We held that the error was harmful and, in doing so, emphasized the jury's

deadlock an hour before issuing its final verdict:

> Although we do not know precisely how the vote among the jurors was split during deliberations,[4] we know that a split existed. The jury issued four notes concerning the substance of the case: three requested portions of the record to review testimony or definitions of certain terms and one, issued four-and-a-half hours after the jury began deliberating, declared that the jury was deadlocked. In response, a modified *Allen* charge was delivered by the trial court, urging the jury to continue deliberating. A unanimous verdict was delivered about an hour and fifteen minutes later. Because we know that a split existed, a 10–2 instruction could have had a significant impact on this situation.

*Id.* at 891.

The Supreme Court disagreed with our harm analysis. After distinguishing the

"prevented-from-presenting" and "improper-judgment" prongs of Rule 44.1(a), the

Supreme Court held that omitting a non-unanimity instruction was not harmful error

because the jury reached a unanimous "yes" verdict: "Because the members of the

jury unanimously came to the conclusion that Jones is an SVP, an instruction

explaining that a vote of ten of the jurors was sufficient for a verdict declining to find

that Jones is an SVP would not have changed the outcome of this case." *Jones 2*,

---

[4]As we pointed out in rejecting the State's argument that Jones failed to show error by soliciting evidence of the nature of the jury's split, it is generally considered improperly coercive to poll a potentially deadlocked jury. *Id.* at 891 (citing *Lowenfield v. Phelps*, 484 U.S. 231, 232, 108 S. Ct. 546, 548 (1988); *Barnett v. State*, 161 S.W.3d 128, 134 (Tex. App.—Fort Worth 2005), *aff'd*, 189 S.W.3d 272 (Tex. Crim. App. 2006)).

7

602 S.W.3d at 914–15.[5] Rather, the Supreme Court directed our attention to the *Allen*-charge issue, instructing that the proper recourse for a suspicion that the jury did not reach its decision based on "deliberate judgment, sound reflection, and conscientious convictions" is to bring a challenge "on the basis that the verdict was the result of 'chance or lot' or that the court's charge, including an *Allen* charge, was impermissibly coercive." *Id.* at 914–15 ("[S]uch challenges are independent grounds for reversal and separate from the question of whether the trial court's instructional error was harmful.").

The Supreme Court reversed our judgment and remanded the case for our consideration of Jones's "remaining appellate issues, including the *Allen*-charge issue." *Id.* at 915.

---

[5]The Supreme Court rejected Jones's argument that the length of time the jury spent deliberating indicated that the jurors were divided or undecided, explaining,

> That may be so. But because the jury ultimately voted unanimously for a "yes" verdict, we must presume, for the purpose of our harm analysis regarding the erroneous instruction, that the jurors voted the way they did because it was their conscientious conviction. If the jurors had been unable to agree, the trial court could have declared a mistrial. But all twelve jurors ultimately voted "yes," and the question of whether the *Allen* charge was impermissibly coercive, which the court of appeals did not reach and the parties have not briefed in this Court, is a separate issue.

*Id.* at 915 (internal citations omitted).

8

## II. Discussion

**A. The evidence is legally sufficient, and Jones's reliability and trustworthiness complaints were not preserved for appeal.**

Before we explain our holding regarding the *Allen* charge, we will address Jones's legal sufficiency issue (Issue 3) because it would afford the greatest relief if resolved in his favor. *See* Tex. R. App. P. 47.1. Because Jones's complaints about reliability and trustworthiness (Issue 2) were addressed in our first opinion in conjunction with the legal sufficiency issue, we will address them here as well.

The unique nature of sufficiency review in sexually-violent-predator civil-commitment cases frames our legal-sufficiency analysis. As the Texas Supreme Court recently reiterated, we apply a mixed standard when evaluating the legal and factual sufficiency of the evidence supporting the verdict in a sexually-violent-predator civil-commitment proceeding. *In re Commitment of Stoddard*, 619 S.W.3d 665, 675–76 (Tex. 2020). In both a legal- and factual-sufficiency review, we "may not ignore 'undisputed facts that do not support the finding' and must otherwise presume the factfinder resolved disputed evidence in favor of the finding if a reasonable factfinder could do so." *Id.* at 676. The difference between the two reviews lies in our treatment of disputed evidence that a reasonable fact finder could not have credited in favor of the finding. *Id.* In a legal-sufficiency review, we are to disregard such disputed and uncredible evidence in determining whether a rational factfinder could find the required sexually-violent-predator elements beyond a reasonable doubt. *Id.* But in a

9

factual-sufficiency review, we are to consider whether that disputed and uncredible evidence, in light of the entire record, is so significant that the factfinder could not have determined beyond a reasonable doubt that the required elements were met. *Id.*[6]

To civilly commit a sex offender, the State must show beyond a reasonable doubt that the person (1) is a repeat sexually violent offender who (2) suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Tex. Health & Safety Code Ann. §§ 841.003, 841.062(a). Jones has never disputed his status as a repeat sexually violent offender and has contested only whether the evidence establishes the existence of a behavioral abnormality; our review will therefore continue to be limited to the second statutorily required element.

On remand, Jones attempts to revive the legal-insufficiency arguments that we rejected in his first appeal. His second attempt fares no better than his first. Jones still contends that Dunham's and Gaines's opinions constitute no evidence as a matter of law because of their partial reliance on police reports, which he views as unreliable and untrustworthy. But as we explained in *Jones 1*, Jones failed to preserve his argument because he did not object to the experts' opinions on the basis of unreliability. 571 S.W.3d at 888–89.

The Supreme Court has explained that "when a reliability challenge requires the court to evaluate the . . . foundational data used by the expert, an objection must be

---

[6]The court acknowledged that "this distinction 'may be a fine one in some cases.'" *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

timely made so that the trial court has the opportunity to conduct [an] analysis" that "necessarily looks beyond what the expert said to evaluate the reliability of the expert's opinion." *Id.* (quoting *Coastal Transp. Co., Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex. 2004)); *see also Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 412 (Tex. 1998); *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 712 (Tex. 1997). Jones attempts to analogize the police reports, and the experts' consideration of them, as no better than an opinion that "the world is flat, that the moon is made of green cheese, or that the Earth is the center of the solar system." *See E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). He is wrong, not only because his arguments conflate the expert's opinions with the foundational data they examined, but also because the police reports are simply not analogous to such opinions.

We do not need any information outside the record before us to know that the Earth is not flat, the moon is not made of green cheese, and our planet is not the center of the solar system. We do not know, based on the record before us, that the police reports are unreliable and untrustworthy; to preserve that argument, Jones had to object to the bases of the experts' opinions in order to preserve his appellate arguments that their opinions constitute no evidence. *See Jones 1*, 571 S.W.3d at 888–89.

As we explained in *Jones 1*, the evidence is legally sufficient to support the jury's finding that Jones suffers from a behavioral abnormality that likely predisposes him to

11

committing sexually violent offenses in the future. *Id.* We therefore overrule Jones's Issues 2 and 3.

## B. Admission of the experts' "basis" evidence provides no reversible error.

Rulings on admission or exclusion of evidence are reviewed under an abuse-of-discretion standard. *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 347 (Tex. 2015). A trial court abuses its discretion if the court acts without reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). We must uphold the trial court's evidentiary ruling if there is any legitimate basis in the record for the ruling. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

Jones contends in Issue 1 that the evidence that the trial court admitted as "basis" evidence under Rule 705(d) of the Texas Rules of Evidence, which we described in *Jones 1*, could only have been admitted for its truth to have had any evidentiary value, making this evidence inadmissible even under Rule 705(d). At trial, Jones's counsel objected to this evidence as hearsay, and although the trial court overruled the objection, it granted Jones' request for a running objection and an instruction as follows:

> The expert has testified and will testify regarding hearsay. Hearsay is a statement made by a person at some time other than while testifying at the current trial or hearing, which a party offers into evidence to prove the truth of the matter asserted in the statement. Generally, hearsay is not admissible as evidence during trial. However, in this case, certain

12

hearsay information contained in records was reviewed and relied upon by experts and will be presented to you through that expert's testimony. Such hearsay evidence is being presented to you only for the purpose of showing the basis of the expert's opinion and cannot be considered as evidence to prove the truth of the matter asserted.

You may not consider this hearsay information for any other purpose, including whether the facts alleged in the records are true.[7]

In support of his argument, Jones points to a concurring opinion by Justice Thomas in *Williams v. Illinois*, 567 U.S. 50, 102–112, 132 S. Ct. 2221, 2255–60 (2012) (Thomas, J., concurring), in which Justice Thomas opined that there is no plausible reason to introduce "basis" evidence other than to establish its truth. Jones also cites to the dissenting opinion in *Williams*, which argued that the idea that "basis" evidence comes in not for its truth but only to help the factfinder evaluate an expert's opinion is "nonsense." *Id.* at 2268–73 (Kagan, J., dissenting, joined by Scalia, Ginsburg, and Sotomayor, JJ.) Similarly, Jones cites to *People v. Sanchez*, 374 P.3d 320, 326–33 (Cal. 2016), which stated that when "an expert relies on hearsay to provide case-specific facts, considers the statements as true, and relates them to the jury as a reliable basis for the expert's opinion, it cannot logically be asserted that the hearsay content is not

---

[7] *See* Tex. R. Evid. 705(d) (prohibiting disclosure of inadmissible-basis testimony only if probative value in evaluating opinion outweighed by prejudicial effect). The State contends that Issue 1 was not preserved for appeal because the objection at trial was simply hearsay, which the State contends does not comport with the argument on appeal. *In re D.E.H.*, 301 S.W.3d 825, 827–28 (Tex. App.—Fort Worth 2009, pet. denied). Jones does not challenge whether the probative value of the "basis" evidence outweighed its prejudicial effect. Since the issue on appeal is whether the "basis" evidence was inadmissible under Rule 705(d) because it is hearsay, we reject the State's contention.

13

offered for its truth." *See also In re Amey*, 40 A.3d 902, 911 (D.C. Ct. App. 2012) (providing a limiting instruction for jury to consider "basis" evidence not for its truth but only to show the basis of an expert's opinion "may call for mental gymnastics which only the most pristine theoretician could perform" (quoting *In re Melton*, 597 A.2d 892, 907 (D.C. 1991) (en banc)). Consequently, Jones concludes that the "basis" evidence in this case had to have been admitted for its truth for it to have had any evidentiary value because the validity of the state-expert opinions (and the jury's evaluation of these opinions) had to turn on the truth of this evidence.

The State responds to the *Williams* case by noting that it was a constitutional Confrontation-Clause case, which is not the case here. *See In re Commitment of Adame*, No. 09-11-00588-CV, 2013 WL 3853386, at *3 (Tex. App.—Beaumont Mar. 14, 2013, no pet.) (mem. op.) (rejecting the *Williams* plurality and affirming the application of Rule 705 to the admissibility of "basis" testimony). We further note that the concurring and dissenting opinions in *Williams* do not constitute binding precedent. *Nabelek v. Bradford*, 228 S.W.3d 715, 719–20 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); *Live Oak Cnty. v. Lower Nueces River Water Supply Dist.*, 446 S.W.2d 14, 20 (Tex. App.—Beaumont 1969, writ ref'd n.r.e.). Likewise, opinions from other jurisdictions are not binding precedent when Texas law governs. *In re State Farm Lloyds*, No. 02-20-00163-CV, 2020 WL 5242414, at *5 & n.4 (Tex. App.—Fort Worth Sept. 3, 2020, orig. proceeding [mand. denied]) (mem. op.); *Heckert v. Heckert*, No. 02-19-00298-CV, 2020 WL 2608338, at *4 & n.5 (Tex. App.—Fort Worth May 21, 2020,

14

no pet.) (mem. op.). However, this court is bound by its precedent. In *In re Commitment of Cain*, an appeal from a civil-commitment judgment, we held that this very type of evidence is permissible under Texas Rule of Evidence 705(d) when given with the appropriate limiting instruction, as was done here. No. 02-18-00043-CV, 2018 WL 5993335, at *2 (Tex. App.—Fort Worth Nov. 15, 2018, no pet.) (mem. op.); *see also In re Commitment of Barrientos*, No. 01-17-00649-CV, 2018 WL 3384563, at *4 (Tex. App.—Houston [1st Dist.] July 12, 2018, pet. denied) (mem. op.). We overrule Jones's Issue 1.

## C. The evidence is factually sufficient.

The standard of review for factual sufficiency in a civil-commitment trial was described above. The entire substance of Jones's factual sufficiency challenge in Issue 4 is stated as, "For essentially the reasons set out in issue three (particularly with an 'extraordinary amount' of the State's case based on facially unreliable and untrustworthy hearsay), Mr. Jones contends that it would be clearly unjust to allow the verdict in this case to stand. *See Brooks* [*v. State*], 323 S.W.3d [893,] 919–20 & n.43 [(Tex. Crim. App. 2010)] (Cochran, J., concurring)." Having overruled Jones's issues as to the admissibility of the "basis" evidence, its alleged unreliability and untrustworthiness, and legal sufficiency, we likewise overrule Jones' Issue 4 since our disposition of the other issues on which he bases his challenge effectively disposes of this complaint. We again point to our recitation of the evidence in this case in *Jones 1*; since all of the evidence was properly before the factfinder, or questions of its

15

reliability and trustworthiness were waived for appeal, and because the evidence supporting the verdict is not too weak nor overwhelmed by contrary evidence, we hold that factually sufficient evidence supports the jury's verdict. Determining that the evidence is factually sufficient to support the jury's verdict, we need not detail all the evidence supporting the judgment. *See Ellis Cnty. State Bank v. Keever*, 888 S.W.2d 790, 794 (Tex. 1994) ("While an appellate court may sometimes find such an outlining of supportive evidence to be useful, we decline to mandate this. Requiring the detailing of all evidence supporting a judgment is not consistent with *Pool*. We perceive no other justification for imposing this additional burden on the court of appeals."); *see also In re E.D.S.*, No. 14-19-00644-CV, 2021 WL 3779029, at *2 (Tex. App.—Houston [14th Dist.] Aug. 26, 2021, no pet. h.) (mem. op.); *City of Weatherford v. Catron*, 83 S.W.3d 261, 267 (Tex. App.—Fort Worth 2002, no pet.).

## D. There is no reversible error in the *Allen* charge (Issue 5).

The analytical starting point regarding coerciveness of *Allen* charges in civil cases is *Stevens v. Travelers Ins.*, 563 S.W.2d 223, 229–32 (Tex. 1978). In *Stevens*, the court was confronted with resolving a divergence among the courts of appeals regarding the proper analysis of *Allen* charges in civil cases. *Id.* at 226–29. In resolving this divergence, the court noted three principles that are important to this analysis:

> 1) Our law does not contemplate that every jury will function perfectly and, to that end, broad discretion is vested in the trial judge to aid in administering and expediting the fact finding process. It is this concern for the expeditious administration of justice that must be balanced against the concern for impartiality

16

in the fact finding process in determining whether it is proper for judges to insert themselves into that process at all. . . .

2) Words of instruction in one context and time frame may be coercive but in another may be no more than a permissible effort on the part of the trial judge to bring the deliberations of the jury to a conclusion in a manner fair to the litigants.

3) Therefore, in order to test a particular charge for coerciveness, it is necessary that the charge be first broken down into its several particulars and analyzed for possible coercive statements. A possibly coercive statement will not invalidate the charge, however, unless it retains its coercive nature when the charge is then read as a whole and all of the circumstances surrounding its rendition and effect are considered.

*Id.* at 228–29.

The *Stevens* court did not expressly address the concept of reversible error. However, the court looked not only to the language of the charge but also to its effect in ruling that the charge as a whole did not have a coercive effect. *Id.* at 232 (noting that the jury deliberated an additional four hours after a weekend break before reaching a verdict). Nevertheless, considering Texas Rule of Appellate Procedure 44.1(a), the need to show reversible error seems to be required. Tex. R. App. P. 44.1(a); *see Elec. Bankcard Sys., Inc. v. Retriever Indus., Inc.*, No. 14-04-00452-CV, 2005 WL 3435294, at *2 (Tex. App.—Houston [14th Dist.] Dec. 15, 2005, no pet.) (mem. op.) (noting in dictum that even if the appellant had not waived its complaint that the charge was coercive, the charge was not reversible under Rule 44.1(a)).

As stated by Rule 44.1(a),

17

(a) No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of:

(1) probably caused the rendition of an improper judgment; or

(2) probably prevented the appellant from properly presenting the case to the court of appeals.

Tex. R. App. P. 44.1(a); *see Jones 2*, 602 S.W.3d at 913; *see also State v. Williams*, 932 S.W.2d 546, 556 (Tex. App.—Tyler 1995), *writ denied*, 940 S.W.2d 583 (Tex. 1996).

Decisions regarding the coercive effects of *Allen* charges in criminal cases are persuasive authority in these sexually-violent-predator commitment appeals. *See In re Commitment of Jurischk*, No. 03-18-00670-CV, 2019 WL 2308594, at *8 (Tex. App.—Austin May 31, 2019, no pet.) (mem. op.). In criminal jurisprudence, a defect in the charge due to coerciveness is reversible when there is some showing that the instruction influenced an improper verdict. *Jackson v. State*, 753 S.W.2d 706, 712 (Tex. App.—San Antonio 1988, pet. ref'd); *Griffith v. State*, 686 S.W.2d 331, 333 (Tex. App.—Houston [1st Dist.] 1985, no pet); *see also Thetford v. State*, No. 02-18-00488-CR, 2021 WL 278913, at *14 (Tex. App.—Fort Worth Jan. 28, 2021) (mem. op., not designated for publication), *rev'd in part on other grounds*, No. PD-0258-21, 2021 WL 2674484 at *1 (Tex. Crim. App. June 30, 2021) (not designated for publication); *O'Brien v. State*, No. 14-94-01218-CR, 1996 WL 711221, at *2 (Tex. App.—Houston [14th Dist.] Dec. 12, 1996, pet. ref'd) (not designated for publication). Thus, a coercive charge that improperly influences a verdict is harmful

18

under either the civil or criminal standard; a coercive charge that does not is harmless under either standard.

The *Allen* charge given in this case provided, with the allegedly objectionable portions bolded,

> **This case has to be settled by some twelve jurors. I regard all of you as honest and intelligent jurors. I do not know of any twelve jurors who can do better than you can. I think you can settle it, and you should settle it, if possible**.
>
> I have no desire to attempt to coerce you into a verdict. This is a matter for each of you to determine for yourself, **but it is to the interest of society that you should reconsider your differences, and, if you can, agree upon a verdict.**
>
> You will please return to your room, and **if you can reconcile your differences and agree upon a verdict, I hope you will please do so.**

Applying the *Stevens* procedure, we first examine the challenged portions separately for their potential coercive effect. The first two sentences seem innocent and a neutral observation akin to the "ably tried by experienced lawyers" comments addressed in *Stevens*, 563 S.W.2d at 230. *See also Freeman v. State*, 115 S.W.3d 183, 187 (Tex. App.—Texarkana 2003, pet. ref'd) (holding it is not coercive to instruct a jury as part of an *Allen* charge that if they cannot reach a verdict, then a mistrial will result). The third sentence is not problematic as it is neutral on its face. It simply reaffirms the jury's ability to do its job. *See Stevens*, 563 S.W.2d at 230. Likewise, the instruction in the second paragraph about "reconsidering your differences" in the

"interest of society" is not coercive. It does no more than instruct the jurors that they are to conduct themselves in a reasonable and mature manner. *See id.* at 231.

However, the fourth sentence of the first paragraph, the last clause of the second paragraph, and the last sentence of the charge, taken together—"I think you can[,] settle it[;] and you should settle it, if possible"; "if you can, agree upon a verdict"; and "if you can reconcile your differences and agree upon a verdict, I hope you will please do so"—are possibly coercive as they told the jurors that it would be pleasing to the court if they reached a verdict. *See id.* at 230.

Because we have found a portion of the charge to be possibly coercive when standing alone, the next step is to "examine the charge as a whole and the circumstances surrounding it in order to properly gauge its effect." *Id.* at 232. In light of the requirements of Rule 44.1(a), this reference in *Stevens* to gauging the effect of possibly coercive language equates to determining if the *Allen* charge, as worded, constituted reversible error. *See* Tex. R. App. P. 44.1(a); *Stevens*, 563 S.W.2d at 230–31; *see also Dennis v. Hulse*, 362 S.W.2d 308, 309 (Tex. 1962) (stating reversible-error rule under former Civil Procedure Rules 434 and 503: "Under our practice an appellate court is not authorized to reverse merely because the record discloses some error that is reasonably calculated to cause a miscarriage of justice. The party appealing must also show that it probably did cause the rendition of an improper judgment in the case.").

Applying *Stevens*, we initially note that the trial judge mitigated the possibly coercive effect of the above referenced language by telling the jurors that he had no desire to coerce them into a verdict. Thus, while the trial judge may have left the jury with the impression that reaching a verdict would please the court, he also directly told the jurors that he had no desire to coerce them into reaching a verdict, diluting any coercive effect from language indicating that a verdict would please the court. *See Stevens*, 563 S.W.2d at 232 (holding that trial court's telling the jurors not to forsake their personal convictions diluted any coercive effect of trial court's statement that it would disapprove the jury's failure to reach a verdict). Other language in the charge further dilutes any possible coercive effect. Although the trial court did not include any language in the *Allen* charge expressly stating that the jurors should not forsake their own personal convictions to reach a verdict, the court did include this language, "This is a matter for each of you to determine for yourself . . . ," which we perceive as being in the nature of language stating that the jurors should not forsake their own convictions to reach a verdict. *See Kelly v. State*, 310 A.2d 538, 542 (Md. 1973) (upholding an *Allen*-type charge delivered to the jury before deliberations that contained the instruction, "[I]t is up to you to determine for yourselves . . . ."). The dilutional effect is similar here.

To further address whether this *Allen* charge is reversible, we also look to criminal law because this concept has been explored in more detail in the criminal jurisprudence of this state than in the civil context. In the criminal context, an *Allen*

charge may be coercive on its face, or the charge may have a coercive effect "in its context and under all the circumstances." *Thetford*, 2021 WL 278913, at \*13. The language, evaluating an *Allen* charge's "coercive effect in its context and under all the circumstances," is like the *Stevens* court's language about examining the charge as a whole and the circumstances surrounding it to properly gauge its effect. *Compare id.* (quoting *Lowenfield*, 484 U.S. at 237, 108 S. Ct. at 550), *with Stevens*, 563 S.W.2d at 229. Such being the case, we rely not only on *Stevens* but also on criminal cases that have applied this test.

In *Thetford*, a criminal case, this court summarized a nonexclusive list of factors to consider in determining whether an *Allen* charge demonstrates actual jury coercion:

> (1) the length of deliberations prior to the *Allen* charge; (2) the length of the trial; (3) the amount and complexity of the evidence involved; (4) the nature of the case; (5) whether the *Allen* charge was premature; (6) whether the jury was required to endure "marathon deliberations"; (7) the number of *Allen* charges given; (8) whether the *Allen* charge cautioned the jurors not to violate their consciences; (9) whether the trial court singled out or pressured the minority jurors; (10) the trial court's knowledge of or inquiry into the jury's numerical division; (11) the length of deliberations following the *Allen* charge; (12) the jury's notes and requests to review evidence after the *Allen* charge; and (13) whether the jurors each affirmed the verdict upon polling.

2021 WL 278913, at \*14.[8] Applying these factors to this case, we cannot conclude that the *Allen* charge had a coercive effect in its context and under all the circumstances.

---

[8]*Thetford*, though unpublished, summarizes the applicable law and is illustrative. *See* Tex. R. App. P. 47.7(a).

22

The first five factors listed in *Thetford*—the length of deliberations prior to the *Allen* charge, the length of the trial, the amount and complexity of the evidence involved, the nature of the case, and whether the *Allen* charge was premature—are not problematic. That is, before receiving the *Allen* charge, the jury deliberated approximately six hours after a seven-hour trial involving three witnesses, two of whom were psychologists testifying about complex psychological disorders, psychological testing, and testing results to assess civil commitment for a sexual predator disorder. *See, e.g.*, *Johnson v. State*, No. 01-17-00903-CR, 2018 WL 4623738, at *4 (Tex. App.—Houston [1st Dist.] Sept. 27, 2018, no pet.) (mem. op., not designated for publication) (holding *Allen* charge not coercive in a one-day sexual-assault case, with testimony from a DNA expert, two police officers, a sexual-assault nurse, the complainant, and the defendant, where jury was deadlocked after one day of deliberations); *Katzenberger v. State*, 439 S.W.3d 566, 570–71 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (holding that trial court did not abuse its discretion by denying a motion for mistrial and issuing an *Allen* charge after ten and a half hours of deliberation on a seven-hour trial in a prosecution for aggravated sexual assault of a child); *Love v. State*, 627 S.W.2d 457, 458–59 (Tex. App.—Houston [1st Dist.] 1981, no writ) (holding in credit-card abuse case that trial court did not abuse its discretion by refusing to declare mistrial when two-hour trial was followed by six hours of deliberation during which jury sent three notes indicating deadlock), *disapproved of on other grounds by Ortega v. State*, 668 S.W.2d 701 (Tex. Crim. App. 1983).

23

The next two criteria, whether the jury was required to endure "marathon deliberations" and the number of *Allen* charges, are nonfactors here. There were no marathon deliberations, and the trial court gave only one charge requiring continued deliberations.

We addressed the eighth factor—whether the *Allen* charge cautioned the jurors not to violate their consciences—above when we discussed the mitigating effects of the charge as a whole. To reiterate, although the charge did not expressly instruct the jurors not to violate their consciences, it did tell the jurors that they each should determine the case individually and that they should individually decide whether to reconsider their positions. Thus, this charge communicated an equivalent message to a charge that expressly instructs jurors not to violate their consciences; it did not pressure the jurors for a verdict. *See, e.g.*, *Miller v. State*, No. 05-01-00510-CR, 2002 WL 1752168, at *2 n.4, *4 (Tex. App.—Dallas July 30, 2002, pet. ref'd) (not designated for publication) (upholding an *Allen* charge instructing jurors to respect the others' opinions and to try to reach a verdict but also stating, "[N]ever assent to a verdict[] which violates the instructions of the Court[,] a verdict which finds as a fact that which under the evidence and your conscience you believe to be untrue.").

The ninth and tenth *Thetford* factors do not apply here. Whether the trial court singled out or pressured the minority jurors is not a factor here as that did not happen in this case. Likewise, the trial court did not have knowledge of or inquire into the jury's numerical division.

24

The eleventh and twelfth factors—the length of deliberation following the *Allen* charge and the jury's notes and requests to review evidence after the *Allen* charge—are also not problematic here. The jury advised the trial court of its deadlock around 4:15 p.m., the *Allen* charge was given about 4:49 P.M., a break was taken from 4:59 p.m. until 5:20 p.m., and the verdict was rendered at 6:35 p.m. without the jury's requesting to see or hear any evidence from the reporter's record. *See Mason v. State*, Nos. 07-19-00066-CR, 07-19-00067-CR, 2020 WL 4355522, at *8 (Tex. App.— Amarillo July 29, 2020, no pet.) (mem. op., not designated for publication) (holding, when the jury had deliberated eight hours before an *Allen* charge, that a verdict rendered about an hour later with no request to review additional evidence was not coercive); *Minze v. State*, No. 02-15-00352-CR, 2016 WL 4474352, at *3–5 (Tex. App.—Fort Worth Aug. 25, 2016, no pet.) (mem. op., not designated for publication) (holding, when jury had deliberated two hours before the *Allen* charge, that verdict delivered fifteen to twenty minutes later with no request to review additional evidence was not coercive).

The final *Thetford factor* is whether the jury was polled and whether each juror affirmed the verdict upon polling. In this case, when the affirmative verdict was returned, each juror individually confirmed, when polled by the court, that this verdict was his or hers without any stated reservations or complaints of coercion. *See Thetford*, 2021 WL 278913, at *18.

The instruction Jones requested, but which the trial court erroneously refused, was that only ten out of twelve votes were required to answer "no" to the sexual predator question. *Jones 2*, 602 S.W.3d at 911. The record does not indicate what the division was among the jurors regarding "yes" and "no" answers prior to their deadlock. Under the circumstances, it would take a great deal of speculation to envision a scenario in which twelve jurors voted for a "yes" answer seventy minutes after receiving an *Allen* charge but a substantial number of them had voted for a "no" answer prior to the deadlock note. Nothing in the record remotely suggests that conclusion, especially since the evidence was so overwhelmingly weighted toward a "yes" answer.

While the *Allen* charge given in this case may not have been tailored to perfection, we have been told that perfection is not required. Whether we apply the standards established in *Stevens* or the factors outlined in *Thetford*, we hold that any error in the *Allen* charge given to the jury in this case does not constitute reversible error. We overrule Jones's Issue 5.

### E.    We deny Jones's Motion to Set Aside Order Granting State's Motion for En Banc Reconsideration.

After we granted the State's motion seeking en banc reconsideration, Jones filed a "Motion to Set Aside Order Granting State's Motion for En Banc Reconsideration." In his motion, Jones reasserts his arguments that the jury requested a lunch break and that the court denied the break, further coercing jurors to reach a

verdict by depriving them of food. The record is devoid of any ruling by the court in response to the jury's note as well as any objection to the court's refusal to respond to the note. The record also does not reflect if the jury made the decision unilaterally to continue deliberations without a response from the court or if the jury went without food. Thus, we may not presume that the trial court denied the jury's request or that the jurors were hungry because those facts are not included in the appellate record. *See* Tex. R. App. P. 34.1; *see also Cummings v. Billman*, 634 S.W.3d 163, 166 n.1 (Tex. App.—Fort Worth 2021, no pet.) (mem. op.). Additionally, this surrounding-circumstances argument was already addressed under our harm discussion in Issue 5, and nothing in the record suggests that the jurors' possibly being hungry influenced their verdict, especially since they did take a break between 4:59 p.m. and 5:20 p.m., before reaching a verdict at 6:35 p.m. We deny the motion.

## III. Conclusion

Having overruled Jones's Issues 1 through 5 and having denied his Motion to Set Aside Order Granting State's Motion for En Banc Reconsideration, we affirm the judgment of the trial court.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered: February 3, 2022